## In re PRUDENCE–BONDS CORPORATION.

## In re GUARANTY TRUST CO. OF NEW YORK.

### No. 26545.

District Court, E. D. New York.
March 8, 1948.

See, also, D.C., 57 F.Supp. 839.

Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City, for Guaranty Trust Co., for motion.

Charles M. McCarty, of New York City, for Prudence-Bonds Corporation.

Joseph Nemerov and Robert Gordon, both of New York City, for bondholders.

Samuel Silbiger and S. H. Rossman, both of Brooklyn, for George E. Eddy.

INCH, District Judge.

On or about January 15, 1920, the Guaranty Trust Company of New York became the Trustee of Prudence-Bonds Corporation, First Mortgage Collateral Bonds, Series A Trust (this was one of a series, having other trustees, none of which are here involved). The Guaranty Trust Company continued as such Trustee pursuant to the Trust Agreement (Exhibit B) until June 30, 1938, when the securities then remaining in the Series A Trust Fund were transferred to the City Bank Farmers Trust Company, successor Trustee, pursuant to the order of this court, entered April 27, 1938.

By said order dated April 27, 1938, the Guaranty Trust Company as such Trustee was authorized and directed to then file its account for judicial settlement. Upon due notice, and on September 1, 1938, said Trustee did file its account, verified August 29, 1938, and then duly petitioned this court for a judicial settlement of said account and releasing and discharging it from any and all responsibility with respect to its acts and proceedings as such Trustee.

·On October 2, 1939, objections to the account were filed by Trustees of the debtor Prudence-Bonds Corporation (new corporation), jointly and severally and on behalf of the holders and owners of Prudence-Bonds Series A. Thereupon and on February 26, 1940, said accounting with said objections thereto was referred to James G. Moore, as Special Master, to take testimony and hear and report on the facts and law.

On or about August 9, 1946, an amended account was duly allowed to be filed, and amended objections thereto were likewise duly filed.

In substance, the Objectors sought to surcharge the Trustee for a very large sum. This accounting is practically the last accounting of various trustees. Hearings were duly commenced before the Special Master on or about October 22, 1946. A great amount of testimony has been taken, and a large number of exhibits received in evidence. On January 21, 1948, the important question arose which is now presented by this motion.

It can be seen from the foregoing that the accounting of this Trustee goes gack to 1920, and covers a period up to June 30, 1938, approximately eighteen years, and the objections point to specific alleged acts during this time in dealing with the securities of the Trust. Bad faith is neither claimed nor indicated.

All through this long period the Guaranty Trust Company had counsel, such being the firm of Stetson, Jennings and Russell, and the successor firms of Davis, Polk, Wardwell, Gardiner and Reed, and Davis, Polk, Wardwell, Sunderland and Kiendl. This Trustee duly retained these experienced lawyers in respect of matters, whatever they were, requiring legal advice. It is stated, as undoubtedly is the case, that since 1920, several hundred opinions, oral and written, have been given the client on a great number of different and unrelated matters. The Guaranty Trust Company of New York is one of the large and important trust companies of the United States. It is said that there were at least fifty opinions which relate to Series A Trust.

The Trust Agreement expressly provides: "The Trustee may advise with counsel, and any action taken or suffered under this agreement in good faith by the Trustee in accordance with the opinion of counsel, shall be conclusive on the corporation and on all holders of Prudence-Bonds issued hereunder and the Trustee shall be fully protected in respect to any such action". (Article V, Section 1, Trust Agreement.) Of course, counsel properly included in its compensation payments for legal opinions and for other services. Some of these are set forth in the motion papers and paid out of the Trust Fund as provided.

Before going into the merits of the motion before me, I should mention that the learned Special Master, who has performed his duties with great industry and skill during these years in which this reorganization has made its way through the courts, stated something in the hearing before him, in excluding certain legal opinions, voluntarily offered by the Trustee as to which all privilege was waived, which, in my opinion, correctly indicates the real issue before him. He said: "It is my job to interpret the Indenture and say whether what they did (the Trustees) was right or wrong and I don't think that I need the opinion—I do not think the opinions of counsel are material on the Objectors' case. They may be material in exculpation of the Trustee if the Trustee see fit to offer them".

In the course of its administration of the Trust, the Trustee had from time to time sent some opinions to the Prudence-Bonds Corporation, waiving any privilege thereto. It was on one hearing, when the said Objectors did offer some such opinions in support of their contentions, that the Special Master made his above ruling excluding them on the ground that they were irrelevant.

The Guaranty Trust Company states that it "has always considered the preservation of 'privilege' to be of the essence of the proper relationship of attorney and client". It therefore has declined to permit a general inspection of opinions on the informal request by Objectors. On September 7, 1945, the Objectors sought to obtain such

inspection of all legal opinions by counsel to its client, the said Trustee, by a number of interrogatories addressed to the Trustee, Interrogatory No. 1 being as follows:

"1. State whether the Trustee, prior to June 29, 1934, obtained any opinions of attorneys in connection with and to guide it in the administration of the Trust, and, if so, state the time or times when such opinions were obtained, the name or names of the attorney or attorneys who rendered such opinions, the name or names of the director, officer or employee of the Trustee who requested the same, and furnish copies thereof and of any correspondence, memoranda or records relating thereto, or state whether such opinions and any correspondence, memoranda or records relating thereto are available for inspection by the Objectors".

The Trustee then made a motion to strike this interrogatory and, after hearing the parties, this court, by order dated October 11, 1945, decided as follows:

"Ordered, that said interrogatory be and is stricken without prejudice to such determination as may be made by the Special Master in the event that the Trustee in support of the account should rely upon any of the legal opinions called for by said interrogatory".

The accounting then proceeded in the course of which five withdrawals of securities allowed by the Trustee, on March 22, July 21, September 27, November 30, and December 1, 1932, came before the Special Master on January 21, 1948.

It was at this hearing that the Trustee first introduced any legal opinion from its counsel in its exculpation. The witness was an assistant secretary of the Trustee. Counsel for the Trustee offered, as exculpation of the Trustee, in accordance with the Trust Indenture, an oral opinion rendered to the Trustee on July 21, 1932, by attorney Thomas Garrett, then a member of the firm of Davis, Polk, Wardwell, Gardiner and Reed, then counsel for the Trustee. Mr. Garrett had died on April 29, 1944.

When this opinion, as to which no privilege is claimed, was introduced, the Objectors then called, because of such offer, for the production of all opinions of counsel received by the Trustee relating in any way to the Series A Trust and received prior to June 29, 1934.

Thus the Special Master had before him substantially a renewal by the Objectors of this first interrogatory, above mentioned, which had been conditionally stricken by this court on October 11, 1945. This would require the Trustee to disclose any and all opinions of attorneys prior to June 29, 1934, received in connection with, and to guide it in, the whole administration of the Trust, the time when such opinions were obtained, the names of the attorneys rendering such opinions, the names of directors and officers and employees of the Trustee who requested the same, and to furnish copies of such opinions, correspondence, memoranda or records relating thereto, or state whether inspection by the Objectors of any of the above things would be made available.

The Special Master reserved decision and now, by his opinion of January 31, 1948, has decided that the Trustee must produce all such opinions obtained from counsel prior to June 29, 1934, in connection with and to guide it in the administration of the Trust including all correspondence with such counsel, setting forth the facts upon which such opinions were based, etc. This decision of the Special Master cannot be confined to situations where the Trustee offered an opinion in exculpation, but practically will or may direct the Trustee to produce, on request of Objectors, all opinions, correspondence, etc., between the counsel and its client, the Trustee, during the administration of its Trust.

As the Special Master states: "In order that this ruling may be speedily reviewed * * * let a subpoena duces tecum issue for the correspondence and opinions in question, the propriety of which ruling may be immediately raised on a motion to quash".

The Trustee by its present counsel, Davis, Polk, Wardwell, Sunderland and Kiendl, immediately made this motion to quash, which is now before the court.

The opinion of the Special Master is, as usual, careful and learned. It is apparent-

ly conceded by all the lawyers, including the Special Master, that there is no direct decision, on this important subject, in this country, relating to the question of privilege existing between a Trust Company, executing such a Trust for many years, counsel retained by it from time to time, bondholders and the debtor in reorganization.

▮ The Special Master relies however on certain English cases. He agrees with the general doctrine of privilege declared to exist in the federal courts, but states that his own feeling is that (all) opinions obained by the Trustee with respect to the administration of a Trust, on behalf and for the benefit of the cestui que trust (such as the bondholders) belong to the latter. That the corporate Trustee here was merely an agent for them.

It is with hesitation that I disagree with the Special Master for he has given due consideration to the issue as appears in his opinion. I think, however, that important rights have been overlooked by both the Objectors and the Special Master in thus attempting to order such an absence of privilege in the case and circumstances of such a Trustee as we have here, administering an important Trust for many years, and its various counsel. In the first place I do not agree that anyone who, during the years, bought a bond or an interest in a bond, thereby made the counsel for the Trustee its attorney or employee and could then possibly embarrass or inconvenience such lawyers because of some action of their real client, the Trustee, or simply because, from time to time, the Trustee properly paid its lawyers for some of their services from the assets of the Trust. I do not think the English cases apply to the situation here. The situation here relates to the far more important question of privilege of counsel which is plainly vitally important to the rights of the client, the attorneys, the debtor and the bondholders in the proper administration of the law and the Trust, and the right of both the Trustee and its attorneys to have advice given when called upon without the fear of possible future annoyance and cross-examination should the acts of the client not meet with the approval of some bondholder, who in the future sought in some way to sustain a criticism of an act.

A different situation entirely is presented where the client asserts a reliance on an opinion or opinions offered in evidence as exculpation for its act. That situation is not present here. The record shows that where such a situation existed no claim of privilege was asserted.

Where discovery of "Facts" are material to the issue such as a specific action of the Trustee in regard to the Trust assets a different issue is presented. The real distinction between a discovery of "Facts" and discovery of "Advice and Opinions" of counsel must be kept in mind. To be sure cases exist where the decision made by the court required consideration of the borderline between discovery of facts and professional advice such as in the case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, which was commenced as one to discover alleged material "Facts".

▮ On the other hand, the importance of "Privilege" is shown by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, as well as by the State Procedure. See Rules 26 and 34; Grauer v. Schenley Products Co., D.C., 26 F.Supp. 768; New York Civil Practice Act, § 353, and the case of Hickman v. Taylor, supra; Bloodgood v. Lynch, 293 N.Y. 308-314, 56 N.E.2d 718; U. S. v. Louisville & Nashville R. R., 236 U.S. 318-336, 35 S.Ct. 363, 59 L.Ed. 598. The Special Master recognizes this importance of privilege.

It is not necessary to decide on this motion, whether the procedure here as authorized by our Rules as to discovery of facts, sufficiently shows a compliance, should the efforts of the Objectors be viewed as one for a discovery of facts, for an opinion or advice by counsel is not evidence of facts. Such professional opinion or advice is irrelevant unless the client voluntarily seeks exculpation because of it.

Where we have a corporate trustee, the rights involved are not alone the rights of a bondholder but of all parties to the Trust Agreement. Thus the Debtor, the Corporate Trustee and the Bondholders have

rights which must be protected. Where we are dealing only with opinions and legal advice of counsel, the court cannot and should not close its eyes, solely because of the interest of bondholders, to the other important right of such a corporate trustee, with its large responsibility, to seek legal advice and nevertheless act in accordance with its own judgment, and the right of counsel to give what is then believed to be proper legal advice without being influenced by fear that in some subsequent litigation such opinions or advice so rendered, may be generally gone over with a biased eye and bring him before a court to explain why he gave same. If this is not so, the experience in management and best judgment by such a corporate trustee is put aside and counsel will not be free to give what is then believed to be proper legal advice, all of which, in the end may result in harm to the bondholders.

As Mr. Justice Murphy states at page 511 of 329 U.S., page 393 of 67 S.Ct., in Hickman v. Taylor, supra: "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served". Also see concurring opinion of Mr. Justice Jackson.

■ It appears from the record before me that an officer of the Trustee was a witness before the Special Master and testified that the Trustee relied upon an opinion of its counsel, as to certain definite acts by the Trustee above mentioned, and which were in dispute as to their legality and thereby claimed exculpation. In this situation, the opinion was presented and any privilege waived. But this did not waive the privilege to any and all other opinions and advice ever given to the Corporate Trustee relating to the many other situations which the Corporate Trustee, from time to time, found itself presented with, during the many years of its trusteeship, and as to which no reliance is claimed as exculpation for the specific act in question. Proper cross-examination of an officer or someone who knew, might allow examination of the witness before the Special Master as to any prior or subsequent opinion or advice claimed not to be to the contrary of the opinion relied on, before the specific action had actually been taken by the Trustee. In case there were such, the Special Master would not be bound by the mere opinion of the witness as to the character of the opinion, but should himself be entitled to first see such opinion and decide whether in his opinion it was relevant to the claim of exculpation and only then, if so relevant, allow the Objectors to take advantage thereof. But this relates solely to an issue of exculpation voluntarily raised by the Corporate Trustee as to a specific act and within the limits of proper cross-examination as to the issue so presented.

■ Accordingly, in view of the absence of direct authority to the contrary in decisions of the courts of this country and at greater length than some may think was justified because I consider it a very important question, I decide that the order of October 11, 1945, is still a proper order and goes as far as should be gone in connection with this right of discovery as to opinions and advice of counsel. This renewed effort to substantially vacate such order and, in effect, extend this right to discover all opinions and advice of various counsel to a Corporate Trustee should not prevail.

The motion to quash the subpoena duces tecum is granted.