The RIGGS NATIONAL BANK OF WASH-INGTON, D. C. and Edward H. Porter, Jr., Trustees under the Will of Willard Saulsbury, Petitioners,

v.

Ruth Anna ZIMMER et al., Respondents.

Court of Chancery of Delaware,
New Castle County.

Submitted March 30, 1976.

Decided April 9, 1976.

Richard G. Elliott, Jr., of Richards, Layton & Finger, Wilmington, for petitioners.

Andrew G. T. Moore, II, of Killoran & Van Brunt, Wilmington, for certain minor and other respondents.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, for Ruth Anna Zimmer and certain other respondents.

Johannes R. Krahmer of Morris, Nichols, Arsht & Tunnell, Wilmington, for Lillian P. Hunter and certain other respondents.

QUILLEN, Chancellor:

There remains in this litigation, a surcharge claim brought by certain beneficiaries of the Trust Estate of Willard Saulsbury to compel the trustees to reimburse the estate for alleged breaches of the trust in regard to certain tax matters. The case comes before the Court on the discovery motion of the beneficiaries to compel production of a legal memorandum prepared in September of 1973 by David S. Workman, Esquire, of the firm of Richards, Layton and Finger. The trustees have declined to produce the document in question on two grounds; the attorney-client privilege and the work product privilege.

---

The material facts appear undisputed. In his capacity as trustee, Edward H. Porter, Jr., in August and September of 1973, communicated certain facts to the firm of Richards, Layton and Finger for the purpose of securing a legal opinion in connection with the trustees' pending petition for instructions and particularly in anticipation of potential tax litigation on behalf of the trust with the State of Delaware, Division of Revenue. That potential litigation concerns the same subject matter now in issue by the surcharge claim. In response to Porter's request, Mr. Workman, an associate of the firm, prepared a legal memorandum based upon communications with Porter. It is asserted by the beneficiaries and acknowledged by the trustees that the law firm was compensated for the preparation of the memorandum from the corpus of the trust estate. Approximately a year later, in October of 1974, the beneficiaries filed a claim to surcharge the trustees and it is the discovery requested in connection with the surcharge claim which is presently challenged. It should be noted that the motion to compel is directed to a single document in a specific litigation context. While the surcharge claim has been filed in the same civil action in which the trustees petitioned for instructions, it is in substance and effect separate litigation initiated by certain beneficiaries, who were respondents to the trustees' petition, and it will be so treated herein.

In seeking to withhold the information demanded here, the trustees first contend that the "Workman memorandum" is within the attorney-client privilege and is therefore protected from disclosure. The basis of this argument is that the document is the result of confidential communications between the trustee and his attorneys for the purpose of securing legal assistance. And, in accordance with the policy favoring freedom and honesty of discourse between a client and his attorney, it is argued that it is necessary to prevent disclosure.

The trustees contend secondly that the document is clearly the work product of their attorney, prepared in connection with potential litigation with the State of Delaware. While acknowledging the fact that the particular document sought in this instance was not prepared with respect to the

surcharge claim now in issue, but primarily for assistance in a separate tax claim involving different parties, they nevertheless assert that the work product rule is, still applicable and that work product prepared for one case remains subject to protection in later litigation. In support of that argument the trustees cite several cases and rely upon the policy which supports the work product privilege, i. e. the protection of an attorney's mental processes and the necessity for confidentiality in the performance of his professional functions. Having characterized the document as work product, the trustees contend that, under the discovery rules, the beneficiaries must establish a substantial need for the material in the preparation of their case and an inability without undue hardship to obtain the substantial equivalent by other means. See Rule 26(b)(3), Court of Chancery Rules. Asserting no such showing was made here, the trustees maintain that disclosure is not required.

The beneficiaries' argument is simply that the Workman memorandum cannot be subject to the various privileges asserted by the trustees because, in effect, it was prepared for *their* benefit and in aid of the administration of the trust. In support of that argument, they emphasize the fact that the fees for the preparation of the document in question were paid out of the corpus of the trust and therefore indirectly by the beneficiaries. Because the memorandum was completed over a year before the surcharge claim was filed and months before it was first asserted, they argue that it cannot logically be considered to have been in aid of the trustees' defense of the surcharge claim. The issue as framed by the beneficiaries, therefore, is simply whether they are entitled to inspect an opinion of counsel procured by a trustee to aid him in his duties as administrator of the trust. They view the issue basically as one of the substantive law of trusts.

This is not a simple case of a single client communicating with his attorney to obtain legal assistance but presents a situation which involves the rights of other parties as well. Thus, it seems to me that whether or not disclosure of the document in question should be allowed in this instance must be determined in light of the purpose for which it was prepared, and the party or parties for whose benefit it was procured, in relation to what litigation was then pending or threatened. If it is determined that the beneficiaries were ultimately the persons intended to benefit from the legal assistance requested and the memorandum which was drafted in response thereto, the issue of the asserted right to inspect the document against the defensive claim of privileges comes into clearer focus.

I find on the basis of the record that the Workman memorandum was prepared ultimately for the benefit of the beneficiaries of the trust and *not* for the purpose of the trustees' own defense in any litigation against themselves. At the time it was prepared the litigation which was then pending was a petition for instructions, the very nature of which normally indicates that the trustees were not implicated in any way. There was also the possibility of potential litigation against the State of Delaware, Division of Revenue. Both of these actions suggest that the legal assistance to the trustees would be rendered only in their service to the beneficiaries. In both instances, the ultimate or real clients were the beneficiaries of the trust, and the trustee, Mr. Porter, in his capacity as a fiduciary, was, or at least should have been, acting only on behalf of the beneficiaries in administering the trust. At that stage, there were no procedings requiring the trustees to seek legal advice personally. As of that time there are in the record no allegations of litigation, or even threats of it, against the trustees. Moreover, there is nothing before the Court to suggest that the purpose of the Workman memorandum was defensive on the trustees' part. Clearly then, the rights of the beneficiaries would have been the foremost consideration in Mr. Porter's consultations and communications with his legal advisers. Moreover,

the payment to the law firm out of the trust assets is a significant factor, not only in weighing ultimately whether the beneficiaries ought to have access to the document, but also it is in itself a strong indication of precisely who the real clients were. I conclude that the legal services were performed at the request of the trustee for the benefit of the beneficiaries of the trust. Indeed, were this not the case, it may have been improper to charge the trust estate with cost of the legal services. The Delaware Supreme Court has indicated two situations in which an allowance from a trust corpus for attorneys' fees is legitimate. In *Bankers Trust Company v. Duffy,* Del. Supr., 295 A.2d 725, 726 (1972), the Court found such an allowance proper: "when the attorneys's services were necessary for the proper administration of the trust . . . or where the services otherwise resulted in a benefit to the trust. . . ."

Next, it is necessary to consider whether the beneficiaries ought to be permitted to inspect documents prepared by an attorney on their behalf though completed at the request of the trustee or whether the privileges asserted are of such compelling importance as to allow the trustee to withhold the documents from them. For the reasons which are set forth below, I conclude that the trustee's invocation of the privileges cannot shield the document involved herein from the beneficiaries' desire to examine it.

Initially, and most importantly, it must be noted that the trustees have substantive fiduciary duties to the beneficiaries. The special relationship puts this case in an entirely different context than a simple motion for discovery against a claim of privilege. Incredibly, counsel agree that American case law is practically nonexistent on the duty of a trustee in this context. But our treatise writers have not been silent. Thus, Professor Scott writes:

"A beneficiary is entitled to inspect opinions of counsel procured by the trustee to guide him in the administration of the trust."

II *Scott on Trusts,* 3d Ed., § 173. The trustee has been described as a mere representative whose function is to attend to the disposition and maintenance of the trust property so that it may be enjoyed by the beneficiaries in the manner provided by the settlor. In order for the beneficiaries to hold the trustee to the proper standards of care and honesty and procure for themselves the benefits to which they are entitled, their knowledge of the affairs and mechanics of the trust management is crucial. See *Bogert on Trusts,* 2d Ed., § 961. And, when the beneficiaries desire to inspect opinions of counsel for which they have paid out of trust funds effectively belonging to them, the duty of the trustees to allow them to examine those opinions becomes even more compelling. The distinction has often been drawn between legal advice procured at the trustee's *own* expense and for his *own* protection and the situation where the trust itself is assessed for obtaining opinions of counsel where interests of the beneficiaries are presently at stake. See *Restatement of Trusts,* 2d, § 173 comment b.

This fiduciary duty has led the English courts to conclude that beneficiaries have the right to inspect the opinions of counsel in circumstances such as those in the case at bar. Indeed, that has been the English rule for over one hundred years. *Talbot v. Marshfield,* 2 Drew & Sm. 549, 62 Eng. Rep. 728 (Ch.1865). See also *Wynne v. Humberston,* 27 Beav. 421, 54 Eng.Rep. 165 (1858); *In re Mason,* 22 Ch.D. 609 (1883). Delaware is a State with a strong English common law tradition and English authorities, both at law and in equity, even as to matters of persuasion, perhaps have more weight here than elsewhere. It seems clear to this Court that, given a matter of specific and legitimate concern, a beneficiary's interest in the trust affairs ought to be encouraged rather than thwarted and the trustee's duty in that respect should be characterized by complete and continuing

openness. To me the question becomes whether the privileges claimed and the policies supporting them should override a clearly desirable rule of substantive trust law.

■ The attorney-client privilege was discussed by Chancellor Duffy in *Texaco, Inc. v. Phoenix Steel Corporation,* Del.Ch., 264 A.2d 523, 524 (1970) in pertinent part as follows:

"Attorney-client privilege is established in Delaware, not by statute but by application of common law principles. . . . The requisites of privilege are those stated by Judge Wyzanski in *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357 (D.Mass.1950). an opinion which is now regarded as landmark:

" 'The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.' "

The attorney-client privilege protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential, and the confidentiality is not waived. See *United States v. United States Shoe Macinery Corp.,* 89 F.Supp. 357 (D. Mass.1950); *Texaco, Inc. v. Phoenix Steel Corp., supra; State of Delaware ex rel. State Highway Department v. 62.96247 Acres of Land in New Castle County,* Del. Super., 193 A.2d 799 (1963); 8 *Wigmore on Evidence* (McNaughton rev. 1961) § 2285. Wigmore lists four fundamental conditions necessary to the establishment of the attorney-client privilege:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

"(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

"(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation."

■ Thus, the purpose of the attorney-client privilege is to foster the confidence of the client and enable him to communicate without fear in order to seek legal advice. *Valente v. Pepsico, Inc.,* 68 F.R.D. 361, 367 (D.Del.1975). This is indeed important. But courts have noted that the privilege is an exception to the usual rules requiring full disclosure and its scope can be limited where circumstances so justify. *United States v. Goldfarb,* 328 F.2d 280 (6th Cir. 1964); *Valente v. Pepsico, Inc., supra,* 68 F.R.D. at 367; *McCormick on Evidence,* 2d Ed., § 89. It should also be recognized that the privilege belongs to the client and not to the attorney. *McCormick, supra,* § 92.

■ With these principles in mind, it is apparent that the trustee's claim of attorney-client privilege here is unfounded. As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that *he* is personally being served. And, the beneficiaries are not simply incidental beneficiaries who *chance* to gain from the professional services rendered. The very intention of the communication is to aid the

beneficiaries. The trustees here cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege. The policy of preserving the full disclosure necessary in the trustee-beneficiary relationship is here ultimately more important than the protection of the trustees' confidence in the attorney for the trust. See *Valente v. Pepsico*, supra, 68 F. R.D. at 367 wherein the requirement that the privilege be not otherwise in violation of a weightier public policy than the preservation of confidential attorney-client communications was discussed. The fiduciary obligations owed by the attorney at the time he prepared the memorandum were to the beneficiaries as well as to the trustees. In effect, the beneficiaries were the clients of Mr. Workman as much as the trustees were, and perhaps more so.

The trustees rely upon a case from the Federal District Court of the Eastern District of New York, *In re Prudence-Bonds Corporation*, 76 F.Supp. 643 (E.D.N.Y. 1948). Indeed that decision is cited as the only American case specifically dealing with the problem at hand in regard to the attorney-client privilege and it reached a different result than the English authority noted above. Some of the language in the *Prudence-Bonds* case is in striking contrast to the English rule. It emphasizes the necessity of having the corporate trustee free to exercise its own judgment after consulting with counsel and that such freedom should be unhindered by the threat of future disclosure of the attorney-client communication.

Initially, it should be noted that the English authority, in my judgment, puts the proper emphasis on fiduciary responsibility and that emphasis is especially appropriate in the private testamentary trust which exists here.

Secondly, as the *Prudence-Bonds* opinion itself recognized, the factual situation was distinguishable from the typical trust and the Court said: "I do not think the English cases apply to the situation *here*." (Emphasis added). 76 F.Supp. at 646. And, indeed there is a difference. The *Prudence-Bonds* case involved an indenture trustee for an issue of corporate bonds. While distinction can perhaps be drawn on the basis of the breadth of discovery sought or the somewhat fuzzy concern over work product, I do not emphasize that distinction. But there runs through the opinion concern about the multiple rights of the various persons in the indenture trust arrangement. This is perhaps illustrated at 76 F.Supp. 646-647 where the Court said:

> "Where we have a corporate trustee, the rights involved are not alone the rights of a bondholder but of all parties to the Trust Agreement. Thus the Debtor, the Corporate Trustee and the Bondholders have rights which must be protected."

To put it another way, it is more difficult, due to multiple interests involved in the *Prudence-Bonds* situation, to label the bondholders' interest there as the equivalent of the client's interest than it is the case now before the Court. That strikes me as the key difference and a firm basis for distinguishing the *Prudence-Bonds* case. Since in this case the real clients are the beneficiaries themselves, unlike the situation in *Prudence-Bonds* where the trustee was the actual client, the attorney-client privilege is here not as compelling.

I conclude that the attorney-client privilege does not bar the disclosure sought by the instant motion to compel.

 I turn now to the work product privilege. The trustees' invocation of the work product privilege presents a slightly different problem, because that privilege is not that of the client, but one belonging to the attorney. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F. 2d 480 (4th Cir. 1973). Closely allied to the need of promoting a policy of free disclosure by the client to enable the lawyer to render professional assistance most ef-

fectively is a public policy protecting the privacy of lawyers in their work and encouraging the freedom of lawyers from interference in the task of preparing their clients' cases for trial. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz, supra; Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551 (2d Cir. 1967).

The work product privilege has been formalized by Court Rule and, in a sense, is now codified. Rule 26(b)(3) of the Chancery Court Rules provides in relevant part:

" . . . a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the Court shall. protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Compare: *Wise v. Western Union Telegraph Co.,* Del.Super., 6 W.Harr. 456, 178 A. 640 (1935); *Empire Box Corp. v. Illinois Cereal Mills,* Del.Super., 8 Terry 283, 90 A.2d 672 (1952); *Frank C. Sparks Co. v. Huber Baking Co.,* Del.Super., 10 Terry 267, 114 A.2d 657 (1955); *McManus v. Food Fair Stores, Inc.,* Del. Super., 188 A.2d 678 (1962). Because the work product privilege has as its overriding concern the protection of the *lawyer* as he performs his professional functions,

the continued application of that privilege in a situation such as the one now presented may be more important than the trustees' privilege for confidential communications. Nevertheless, I am persuaded that the work product should not bar the disclosure sought on the present application.

It is agreed that the pertinent question to be determined here is whether the Rule applies to materials prepared in connection with litigation previously anticipated, rather than the litigation in which production is sought. The trustees maintain that, in light of the principles upon which the privilege is based, it is only logical that the protection of the work product doctrine not be confined to the litigation for which it was prepared. The beneficiaries, on the other hand, contend that the work product immunity does not extend to later litigation not involving the same parties. Furthermore, they argue that the dual litigation issue is irrelevant since the memorandum was prepared on their behalf and that the work product claim is merely the trustees' tactic for circumventing their fiduciary duty to make such information available.

First, it should be mentioned that the fact that the surcharge claim was not pending at the time the Workman memorandum was completed is not of controlling significance. The privilege for trial preparation materials does not require the existence of an actual pending lawsuit but only that materials be written specifically in preparation for threatened or anticipated litigation. Secondly, the decisions are not in agreement as to whether or not actual preparation material under Rule 26(b)(3) is protected only if prepared in anticipation of litigation or for trial in the same case in which the immunity accorded to such material is sought. Professor Moore in 4 *Moore's Federal Practice,* 2d Ed., para. 26.64[2] at p. 415–416, in dealing with the issue, noted:

" . . . Prior to the 1970 amendments [to the Federal Rules of Civil Proce-

dure], the question as to whether the papers in one action were to be considered 'work product' for purposes of a subsequent one, turn on whether the first action was complete and upon the relationship between the first and second actions. There seems every reason to assume that the same Rule would apply under Rule 26(b)(3) since the underlying policies remain precisely the same."

Some courts have held that an attorney's memorandum in a prior case involving different parties does not have the protection of the work product privilege, particularly when the prior case is remote in time and issues from the case being currently litigated. See e. g. *United States v. International Business Machines Corp.*, 66 F.R.D. 154, 178 (S.D.N.Y.1974); *Tobacco and Allied Stocks, Inc. v. Transamerica Corp.*, 16 F.R.D. 534, 537 (D.Del.1954). Others consider that the broad purpose of the rule which is designed to encourage effective legal representation by removing counsel's fear that his thoughts will be invaded by his adversary if he records them would be frustrated if access to his files were later permitted. *Republic Gear Co. v. Borg-Warner Corp.*, supra; *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, supra; *LaRocca v. State Farm Mutual Automobile Insurance Co.*, 47 F.R.D. 278 (W.D. Pa.1969).

■ Thus, the decisions do not provide an easy answer. Each case must turn on its own facts. The decision appropriately would depend on how closely related the prior litigation is to the litigation at hand. In this case, notwithstanding the similar legal issues involved in the trust's claim against the State and the surcharge claim, I do not find it necesssary to resolve this question. In the particular factual situation at hand, I am of the view that the work product privilege should not be applied to obstruct the beneficiaries' quest for discovery even granting the privilege extends to subsequent litigation.

In the first place, irrespective of whether or not the two claims involved separate parties, the memorandum was prepared for the benefit of the beneficiaries and the attorneys' actions were in the context that the beneficiaries were the ultimate clients to be served. Only the memorandum, the document intended to be communicated to the client, is being sought. To permit the work product privilege to shield the memorandum from the beneficiaries would contravene the policy of full disclosure which is essential in the trustee-beneficiary relationship. Moreover, although the rationale is not precisely the same, it is not totally true, as contended by the trustees, that the English authorities previously relied upon are beyond a work product context. The English courts have developed a concept of privilege to include all documents prepared by or for counsel with a view to litigation. *Hickman v. Taylor*, supra, at 329 U.S. 510, 67 S.Ct. 385; 4 *Moore's Federal Practice,* ¶ 26.63[2]; *Bray on Discovery* (1885), p. 404 et seq. The trust law previously noted exists notwithstanding the context of professional legal privilege including this documentary privilege. *Bray*, supra, p. 379–381. The principles of English trust law previously noted are applicable in the work product context and I apply them again. Therefore, I do not believe the work product privilege applies given the public policy considerations present in this case.

Secondly, I believe the requirement of "substantial need" for the document has been fulfilled here. There is no "substantial need" in the sense that the beneficiaries need to know the legal views expressed in the memorandum. They do not as they are represented by competent counsel and can get expert advice on the law. But, the beneficiaries are entitled to know what the trustees did, that is, what legal opinion was sought on their behalf and what was done in light of that opinion on their behalf. The production of the opinion would fill a needed factual gap not available, at least not with the same degree of accuracy, from any other source. Thus, even were we to

assume, contrary to the judgment expressed above, that the work product privilege is fully operative, the beneficiaries would nevertheless be entitled to inspect the material under the standard set forth in the Rule.

I therefore conclude that the work product privilege does not preclude the production of the Workman memorandum in this case.

For the reasons stated above, the motion to compel production of the Workman memorandum is granted. IT IS SO ORDERED.