329 P.3d 1055

**In the Matter of The KIPNIS SECTION 3.4 TRUST under The Dorothy B. Kipnis Survivor's Trust Agreement, dated November 26, 1990,**

**Jane Kipnis Hammerman; DBK Residuary Property, LLC; and BOKF, N.A., dba Bank Of Arizona, as Successor Trustee of the Section 3.4 Trust under The Dorothy B. Kipnis Survivor's Trust Agreement, dated November 26, 1990, Petitioners/Appellees,**

v.

**The Northern Trust Company, an Illinois corporation, Respondent/Appellant.**

**No. 1 CA–CV 13–0260.**

Court of Appeals of Arizona,
Division 1.

June 3, 2014.

Becker & House, PLLC By Mark E. House, Allison E. Evans, Scottsdale, Counsel for Petitioners/Appellees.

Fennemore Craig, P.C. By Roger T. Hargrove, Jane A. Proctor, Alexander R. Arpad, Phoenix, Counsel for Respondent/Appellant.

Judge PETER B. SWANN delivered the opinion of the Court, in which Presiding Judge ANDREW W. GOULD and Judge JON W. THOMPSON joined.

## OPINION

SWANN, Judge.

¶ 1 This case concerns the scope of a trustee's attorney-client privilege as against a beneficiary and a successor trustee. The trial court concluded that because the trustee had sought legal advice from trust counsel using trust funds, the trustee could not withhold any of its attorney-client communications from the beneficiary or the successor trustee. We adopt the fiduciary exception to the attorney-client privilege and hold that disclosure to the beneficiary and successor trustee of otherwise privileged communications is required insofar as the trustee seeks legal advice in its fiduciary capacity on matters of trust administration. We further hold that the attorney-client privilege extends to legal advice sought in the trustee's personal capacity on matters not of trust administration. For the reasons stated below, we reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Northern Trust Company served as trustee of the Dorothy B. Kipnis Survivor's Trust Agreement ("Survivor's Trust Agreement") and the Section 3.4 Trust created thereunder. Jane Kipnis Hammerman is the sole beneficiary for life, and the remainder interest is in the trustor's grandchildren. During its tenure as trustee, Northern Trust also managed the Section 3.4 Trust's ownership of DBK Residuary Property ("DBK"), a single-member limited liability company holding title to a warehouse in Phoenix. Northern Trust hired the law firm Quarles & Brady to advise it on the administration of the Section 3.4 Trust and management of DBK, and paid the firm with trust funds as authorized under the Survivor's Trust Agreement.

¶ 3 Northern Trust eventually had to address multiple lien foreclosure actions because a DBK warehouse tenant defaulted on its lease. Northern Trust organized a sale of the warehouse to a third party on the condition that it satisfied the liens before closing. Hammerman disagreed with this strategy and, in accordance with the Survivor's Trust Agreement, removed Northern Trust as trustee before the sale closed. Northern Trust continued as trustee until Hammerman appointed Bank of Arizona as successor trustee and new manager of DBK.

¶ 4 Once Hammerman removed Northern Trust as trustee, she and Bank of Arizona asked Northern Trust to provide all files related to the Section 3.4 Trust. Northern Trust transferred most of its files but withheld a number of e-mails that it claimed were subject to the attorney-client privilege. Hammerman, as the Section 3.4 Trust's beneficiary, Bank of Arizona, as successor trustee, and DBK jointly petitioned the court to compel Northern Trust to release "any and all information related to" the Survivor's Trust Agreement, the Section 3.4 Trust and DBK. Northern Trust moved to dismiss the petition, arguing that the communications withheld were privileged because they pertained to advice sought in Northern Trust's corporate capacity rather than in its fiduciary capacity.

¶ 5 The court heard oral argument on Northern Trust's motion to dismiss. Counsel for Northern Trust conceded that he believed Northern Trust was obliged to provide all communications that "go to trust administration," but explained that

almost since the beginning of the problems with the former tenant at the DBK property . . . there has been conflict between Northern Trust as trustee and Ms. Hammerman as the beneficiary, and that's evidenced in . . . e-mails and communications. Ms. Hammerman was asking Northern Trust about what they were and weren't doing. Her attorney[s] . . . [were] doing the same thing. . . . And to this has culminated a clear and present threat of litigation for some time now, and many of the communications between Northern Trust and its attorneys were either seeking legal advice or providing legal advice . . . to agents and employees of Northern Trust

as to how to respond to these threats [from] Ms. Hammerman or her attorneys.

... I think it's important to note that we're up against the backdrop of over 1,100 e-mails that have—that are in existence. Only approximately four percent of those have been withheld, and that's because Northern Trust believes that those communications are—all within this special category of advice they sought in their individual or non-fiduciary or non-trustee administration capacity.

The court denied the motion to dismiss, granted the petition to compel without further hearings and ordered Northern Trust to disclose all additional information requested in the petition through the date Hammerman removed it as trustee. In the court's view,

[a] mistake was made by not retaining ... private counsel to give this advice. I think then I would have preserved that attorney/client-privileged communication at that point. That wasn't done. The trust was charged. The trust, I think, has an absolute right to the information that it paid for, and they're the successor trustees, and so I'm ordering that additional information to be disclosed that they've requested....

The court stayed its order pending an anticipated appeal and Northern Trust timely appeals.

## DISCUSSION

¶ 6 Northern Trust contends that the trial court erred by finding that it could not assert the attorney-client privilege against either Hammerman or Bank of Arizona as to communications that allegedly concerned a potential dispute between Northern Trust and Hammerman. This appeal therefore presents two discrete but closely related issues: (1) whether a trustee may assert the attorney-client privilege against a trust beneficiary over advice received from trust counsel, and (2) whether a trustee may assert the attorney-client privilege against a successor trustee over advice received from trust counsel.

## I. THE SCOPE OF A TRUSTEE'S ATTORNEY–CLIENT PRIVILEGE AGAINST A TRUST BENEFICIARY

### A. The Fiduciary Exception to the Attorney–Client Privilege

¶ 7 The scope of the attorney-client privilege is a question of law that we review de novo. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003). Under A.R.S. § 12–2234(A), "an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." Although the attorney-client privilege extends to "*any* communication" from the client, Arizona courts may, and in the past have, limited its scope where circumstances warrant. *See* Ariz. R. Evid. 501 ("The common law—as interpreted by Arizona courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: [1] the United States or Arizona Constitution; [2] an applicable statute; or [3] rules prescribed by the Supreme Court."); *Buell v. Superior Court*, 96 Ariz. 62, 68, 391 P.2d 919, 924 (1964) (adopting crime-fraud exception to attorney-client privilege); *Benton v. Superior Court (State)*, 182 Ariz. 466, 469, 897 P.2d 1352, 1355 (App.1994) ("Not every exception to a privilege established by statute is legislative in origin. The judiciary has also imposed some limitations on it."). To date, Arizona has neither adopted nor rejected the "fiduciary exception" to the attorney-client privilege, which stems from a principle of English trust law that requires a trustee to comply with a beneficiary's request to produce all legal advice that the trustee has obtained on matters concerning administration of the trust. *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir.2007).

¶ 8 Courts in other jurisdictions have relied on two distinct rationales in adopting the fiduciary exception. *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir.1999). First, some have found that the trust beneficiaries are "the real clients" and thus the holders of the attorney-client privilege. *Riggs Nat'l Bank of Wash., D.C. v. Zimmer*, 355 A.2d 709, 713–14 (Del.Ch.1976). These courts rea-

son that "[a]s a representative for the beneficiaries of the trust which [it] is administering, the trustee is not the real client in the sense that [it] is personally being served." *Id.* at 713. "Understood in this fashion, the fiduciary exception is not an 'exception' to the attorney-client privilege at all. Rather, it merely reflects the fact that, at least as to advice regarding [trust] administration, a trustee is not 'the real client' and thus never enjoyed the privilege in the first place." *Mett,* 178 F.3d at 1063. In *Riggs National Bank,* the court focused on three factors to identify the beneficiaries as the "real" clients: (1) the trustees had sought legal advice that would only benefit the trust, not the trustees personally; (2) the trustees had paid for that advice with trust funds, not the trustees' personal funds; and (3) there was no adversarial proceeding pending against the trustees, which presumably meant that there was no need for the trustees to seek advice in a personal capacity. 355 A.2d at 711–12.

¶ 9 Contrary to the "real client" rationale, this court has held that the beneficiaries of an estate were not the clients of the personal representative's attorneys because "a personal representative owes a beneficiary the lesser duty of fairness, rather than the duty of undivided loyalty [that an attorney owes a client], [which] demonstrates that the beneficiary is not the personal representative's client." *In re Estate of Fogleman,* 197 Ariz. 252, 257, ¶¶ 10–11, 3 P.3d 1172, 1177 (App. 2000). In *Fogleman,* we reasoned that allowing a beneficiary to be considered a client would be untenable because "[t]he personal representative would not be able to give undivided loyalty to some [beneficiaries] while at the same time being truly impartial and fair to others." *Id.* at ¶ 12. Relying on *Fogleman,* we have also held that an attorney's representation of a trustee did not pose a conflict of interest with the trust's beneficiary because the *"[b]eneficiary was not a client of the trust attorneys." In re CVR 1997 Irrevocable Trust,* 202 Ariz. 174, 177,

¶ 17, 42 P.3d 605, 608 (App.2002) (emphasis added). In *CVR 1997 Irrevocable Trust,* we similarly reasoned that "[t]he attorneys' duties to [the b]eneficiary were derivative of their duty to their client, Trustee, and the attorneys did not owe Beneficiary a duty of undivided loyalty; they simply owed him a duty of fairness and impartiality." *Id.* at ¶ 19. Informed by these decisions, we reject the notion that a beneficiary is "the real client."

¶ 10 The second rationale relied upon to adopt the fiduciary exception is that a trustee's duty to furnish information about the trust to its beneficiaries includes the trustee's attorney-client communications. *Riggs Nat'l Bank,* 355 A.2d at 712. "Viewed in this light, the fiduciary exception can be understood as an instance of the attorney-client privilege giving way in the face of a competing legal principle." *Mett,* 178 F.3d at 1063.

¶ 11 Under the Arizona trust code, a trustee has a duty to "keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." A.R.S. § 14–10813(A). This provision does not expressly require a trustee to disclose *all* of its communications with an attorney.[1] *See Wells Fargo Bank v. Superior Court (Boltwood),* 22 Cal.4th 201, 91 Cal.Rptr.2d 716, 990 P.2d 591, 594 (2000) (construing similar provision of the California Probate Code and concluding that "[c]ertainly a trustee can keep beneficiaries 'reasonably informed' ... without necessarily having to disclose privileged communications"). But even though the statute does not compel the conclusion that a trustee cannot assert the privilege as against a trust beneficiary, it does not refute that proposition, and it is consistent with the second rationale expressed in *Mett.*

■ ¶ 12 We find the Restatement (Third) of Trusts [2] instructive:

---

1. The official comment to section 813(a) of the Uniform Trust Code, from which A.R.S. § 14–10813(A) is derived, explains that "[t]he drafters of this Code decided to leave open for further consideration by the courts the extent to which a trustee may claim attorney-client privilege against a beneficiary seeking discovery of attor-

ney-client communications between the trustee and the trustee's attorney."

2. Under A.R.S. § 14–10106(B), we are compelled to look only to the Restatement (Second) of Trusts, and not subsequent restatements of trusts,

[L]egal consultations and advice obtained in the trustee's fiduciary capacity concerning decisions or actions to be taken in the course of administering the trust ... are subject to the general principle entitling a beneficiary to information that is reasonably necessary to the prevention or redress of a breach of trust or otherwise to the enforcement of the beneficiary's rights under the trust.

Restatement (Third) of Trusts § 82 cmt. f (2007). We are persuaded that "for the beneficiaries to hold the trustee to the proper standards of care and honesty and procure for themselves the benefits to which they are entitled, their knowledge of the affairs and mechanics of the trust management is crucial." *Riggs Nat'l Bank*, 355 A.2d at 712. And we agree with the view that "a beneficiary's interest in the trust affairs ought to be encouraged rather than thwarted and the trustee's duty in that respect should be characterized by complete and continuing openness." *Id.* at 712–13; *see also Wells Fargo Bank*, 91 Cal.Rptr.2d 716, 990 P.2d at 595 ("In most of the other jurisdictions in which this question has arisen, courts have given the trustee's reporting duties precedence over the attorney-client privilege." (citing *United States v. Evans*, 796 F.2d 264 (9th Cir.1986); *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F.Supp. 906 (D.D.C.1982); *Riggs Nat'l Bank*, 355 A.2d 709; *Hoopes v. Carota*, 142 A.D.2d 906, 531 N.Y.S.2d 407 (N.Y.App.Div. 1988), *aff'd* 74 N.Y.2d 716, 544 N.Y.S.2d 808, 543 N.E.2d 73 (1989))).

¶ 13 We therefore adopt the fiduciary exception and hold that a component of a trustee's duty under A.R.S. § 14–10813(A) is a duty to disclose "legal consultations and advice obtained in the trustee's fiduciary capacity concerning decisions or actions to be taken in the course of administering the trust." Restatement (Third) of Trusts § 82 cmt. f. The attorney-client privilege does not

permit a trustee to withhold "material facts" from a beneficiary simply because the trustee has communicated those facts to an attorney. *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501, 862 P.2d 870, 874 (1993) ("[A] client who has a duty to disclose facts in discovery or otherwise is not relieved of that duty simply because those same facts have been communicated to a lawyer."), *superseded by statute on other grounds*, 1994 Ariz. Sess. Laws, ch. 334, § 1 (2d Reg.Sess.).

¶ 14 We recognize that other courts have rejected the fiduciary exception. *See, e.g., Wells Fargo Bank*, 91 Cal.Rptr.2d 716, 990 P.2d at 597; *Huie v. DeShazo*, 922 S.W.2d 920, 925 (Tex.1996). But those courts were not constitutionally empowered to apply exceptions to the attorney-client privilege in the absence of legislative action. *See Wells Fargo Bank*, 91 Cal.Rptr.2d 716, 990 P.2d at 595–96 ("[C]ourts [that have adopted the fiduciary exception] consider themselves free, in a way we do not, to create exceptions to the [attorney-client] privilege...."); *Huie*, 922 S.W.2d at 924–25 ("Rule 503 [of the Texas Rules of Evidence] contains no exception applicable to fiduciaries and their attorneys. If the special role of a fiduciary does justify such an exception, it should be instituted as an amendment to Rule 503 through the rulemaking process."). Under Ariz. R. Evid. 501, we are able to reconcile the tension between A.R.S. § 12–2234 and A.R.S. § 14–10813 by adopting the fiduciary exception.

¶ 15 Even though we consider the trustee alone to be the "real client," the three factors articulated in *Riggs National Bank* are helpful in determining whether a trustee sought legal advice in a fiduciary capacity. *See* 355 A.2d at 711–12. If a trustee obtains legal advice on matters concerning trust administration, and has no reason to seek that advice other than to benefit the trust, then

---

to determine (1) "[t]he rights and powers of creditors of beneficiaries"; (2) "[t]he duties of trustees to distribute to those to whom a beneficiary owes any duties"; (3) "[w]hether public policy may affect enforceability and effectiveness of the terms of the trust"; and to (4) "effectuate the settlor's intent." Because the scope of a trustee's attorney-client privilege does not fall

within those categories, we also look to the Restatement (Third) of Trusts for guidance. *See Burns v. Davis*, 196 Ariz. 155, 159, ¶ 5, 993 P.2d 1119, 1123 (App.1999) ("To determine if a privilege, absolute or qualified, exists, we first examine the applicable case law. If no clear answer is obtained, then we look to the Restatement for guidance.").

the trustee has acted in a fiduciary capacity and has a duty to disclose that advice to the beneficiaries upon request.

¶ 16 The question whether the trustee acted in a fiduciary capacity cannot be resolved simply by asking who paid for the advice. Under the older Restatement (Second) of Trusts, a trustee was "privileged to refrain from communicating to the beneficiary information acquired by the trustee *at his own expense* and for his own protection." Restatement (Second) of Trusts § 173 cmt. b (1959) (emphasis added). The Restatement (Third) of Trusts instead provides that "the question of who has paid for the legal services, or who ultimately will be required to pay those expenses, although potentially relevant, involves other and complicated considerations ... so that this matter is not determinative in resolving issues of privilege." Restatement (Third) of Trusts § 82 cmt. f; *see also* Randall Roth, *Understanding the Attorney–Client and Trustee–Beneficiary Relationships in the Kamehameha Schools Bishop Estate Litigation: A Reply to Professor McCall,* 21 U. Haw. L.Rev. 511, 526–27 (1999) ("If the lawyer is to be paid out of trust funds, that suggests (but does not finally determine) that the lawyer will be involved in the administration of the trust and therefore is representing the trustee in the trustee's representative capacity. If the lawyer is paid out of the trustee's personal funds, that suggests (but does not finally determine) that the lawyer will be watching out for the personal interests of the trustee, not involved in the administration of the trust, and is therefore representing the trustee in the trustee's individual capacity."). To be clear, "it is not the terms of an engagement letter, but rather the nature of the particular attorney-client communication that is dispositive. This communication-by-communication analysis, while perhaps untidy, is crucial if the attorney-client privilege and the fiduciary exception are to coexist." *Mett,* 178 F.3d at 1065.

¶ 17 In this case, Northern Trust has an obligation to disclose to Hammerman all attorney-client communications that occurred in its fiduciary capacity on matters of administration of the trust. The court erred to the extent that it ordered disclosure of such communications based *solely* on the fact that Northern Trust paid for them with trust funds—the trust does not have an absolute right to information that it paid for. *See* Restatement (Third) of Trusts § 82 cmt. f.

### B.  The Limits of the Fiduciary Exception

¶ 18 The rationales underlying the fiduciary exception are not present when a trustee seeks legal advice in a personal capacity on matters not of trust administration, as opposed to in a fiduciary capacity on matters of trust administration. *See Mett,* 178 F.3d at 1063 ("On either rationale, however, it is clear that the fiduciary exception has its limits—by agreeing to serve as a fiduciary, an ERISA trustee is not completely debilitated from enjoying a confidential attorney-client relationship."). In analyzing whether the fiduciary exception applied to two ERISA trustees' attorney-client communications, the Ninth Circuit described the exception's limits as follows:

The leading American case, *Riggs National Bank v. Zimmer,* 355 A.2d 709 (Del. Ch.1976), which imported the hoary English fiduciary exception precedents to our shores, also implicitly recognized the limits on the exception. In that case, the beneficiaries brought suit against the estate trustees for alleged breaches of the trust in regard to certain tax matters. During the litigation, the beneficiaries sought production of a legal opinion secured by the trustees in connection with potential tax litigation on behalf of the trust with the Delaware Division of Revenue. Although the court required production of the legal opinion, reasoning that the trustees were not the "real clients," it was careful to note that the legal advice "was prepared ultimately for the benefit of the beneficiaries of the trust *and not for the purpose of the trustees' own defense* in any litigation against themselves." *Id.* at 711 (emphasis added)....

Thus, the case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does

not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

*Mett*, 178 F.3d at 1063–64; *see also* Restatement (Third) of Trusts § 82 cmt. f ("A trustee is privileged to refrain from disclosing to beneficiaries or cotrustees opinions obtained from, and other communications with, counsel retained for the trustee's personal protection in the course, or in anticipation, of litigation (e.g., for surcharge or removal). This situation is to be distinguished from legal consultations and advice obtained in the trustee's fiduciary capacity concerning decisions or actions to be taken in the course of administering the trust.").

¶ 19 In *Mett*, to reach the conclusion that the fiduciary exception did not apply, the court analyzed both the context and the content of the particular legal advice that the trustees sought to withhold. 178 F.3d at 1064. In terms of its context, the court found that although there was no legal action related to the ERISA plan pending against the trustees when they sought the advice, the beneficiaries "had begun asking difficult questions" and "[t]rouble was in the air." *Id.* As a result, the court determined that the trustees "had good reason to seek advice from [law firm who also served as trust counsel] regarding their personal exposure to additional civil and criminal liabilities." *Id.* at 1064; *see id.* at 1062 (describing law firm as "w[earing] many hats, serving at various times as counsel to [trustees] personally and in their capacities as ERISA plan trustees"). The court further concluded that the content of the advice "foreclose[d] the application of the fiduciary exception" because the advice "was not prepared for the benefit of the plan or the beneficiaries, nor was it advice regarding administration of the plan." *Id.* at 1064.

Rather, the advice was "plainly 'defensive on the trustees' part,'" *id.* (quoting *Riggs Nat'l Bank*, 355 A.2d at 711), and "aimed at advising the trustees 'how far they were in peril,'" *id.* (quoting *Talbot v. Marshfield*, 12 L.T.R. 761, 762 (Ch. 1865)).

▮▮▮▮ ¶ 20 Informed by the foregoing, we hold that a trustee's attorney-client privilege vis-a-vis a beneficiary extends to all legal advice sought in the trustee's personal capacity for purposes of self-protection. The trial court erred by ordering Northern Trust to disclose legal advice without considering whether Northern Trust had sought that advice in its corporate capacity or whether the advice concerned matters of trust administration. A trustee's attorney-client communications made in a personal capacity do not cease to be privileged merely because the trustee used trust funds to compensate the attorneys or because the same attorneys also provided advice on matters of trust administration.[3] If a trustee's expenditures, including its compensation of counsel from trust funds, prove to have been unauthorized, the proper recourse is for the beneficiary to ask the probate court to remedy that breach under A.R.S. § 14–11001. But "this question of cost allocation does not affect ownership of the attorney-client privilege." *Wells Fargo Bank*, 990 P.2d at 599.

## II. THE SCOPE OF A TRUSTEE'S ATTORNEY–CLIENT PRIVILEGE AGAINST A SUCCESSOR TRUSTEE

¶ 21 Arizona has not defined the scope of a trustee's attorney-client privilege vis-a-vis a successor trustee. Other courts have reached similar conclusions in this context as in the beneficiary context discussed above, but their decisions have rested on different grounds.

¶ 22 In *Moeller v. Superior Court (Sanwa Bank)*, 16 Cal.4th 1124, 69 Cal.Rptr.2d 317, 947 P.2d 279, 288 (1997), the Supreme Court of California held that "the power to assert the attorney-client privilege with respect to

---

**3.** We note that in such situations, counsel quickly may be faced with a conflict of interest between the trustee's individual interests and the interests of the trust. When that type of conflict is initially perceived, the Rules of Professional Conduct may prevent trust counsel from providing further advice to the trustee regarding its personal interests. *See* Ariz. R. Sup.Ct. 42, ER 1.7(a). This case does not require us to decide whether Northern Trust required independent counsel.

confidential communications a predecessor trustee has had with its attorney on matters concerning trust administration passes from the predecessor trustee to its successor upon the successor's assumption of the office of trustee." *See also In re Estate of Fedor*, 356 N.J.Super. 218, 811 A.2d 970, 972 (N.J.Super.Ct. Ch. Div.2001) ("[T]he power to waive the privilege passes to the new trustee."). The *Moeller* court reasoned that because a successor trustee succeeds to all the rights, duties and responsibilities of the predecessor trustee, the trustee's powers must be inherent in the office of the trustee rather than personal to any particular trustee. 69 Cal. Rptr.2d 317, 947 P.2d at 283. The court justified its holding by focusing on the practicalities of a trustee's affairs:

> It is likely, then, that in performing their day-to-day duties, trustees regularly have confidential communications with their attorneys about trust business (e.g., potential acquisitions and dispositions of property, lawsuits involving trust property). At any given time, therefore, many privileged communications that involve pending trust transactions are in existence. To allow for effective continuous administration of a trust, the right of access to these communications and the privilege to prevent their disclosure must belong to the person presently acting as trustee, because that person has the duty to conduct all pending trust business. Therefore, for a trust to continue to operate smoothly when a change in trustee occurs, the power to assert the attorney-client privilege must pass from the predecessor trustee to the successor.

*Id.* at 284. The court also reasoned that a successor trustee must have access to a predecessor trustee's legal files to avoid liability and harm to the beneficiaries, though it recognized that the trust instrument may exculpate the successor trustee from liability for a predecessor trustee's breach of trust. *Id.* at 287–88 & n. 6.

¶ 23 Because the Arizona trust code defines "trustee" to include successor trustees, A.R.S. § 14–10103(22), a successor trustee succeeds to the same powers that the predecessor trustee possessed and is subject to the same duties under the Arizona trust code, *see* Unif. Trust Code § 103 cmt. (2000). Among those duties is the duty to keep the beneficiaries of the trust "reasonably informed about the administration of the trust," A.R.S. § 14–10813(A), which includes a duty to disclose "legal consultations and advice obtained in the trustee's fiduciary capacity concerning decisions or actions to be taken in the course of administering the trust," Restatement (Third) of Trusts § 82 cmt. f. To prevent a predecessor trustee from interfering with a successor trustee's duties and impeding the transition of trustees to the detriment of the beneficiaries, we hold that a predecessor trustee cannot assert the attorney-client privilege against a successor trustee as to legal advice that the predecessor trustee sought in its fiduciary capacity on matters of trust administration. *See Moeller*, 69 Cal.Rptr.2d 317, 947 P.2d at 283–84, 287–88.

¶ 24 However, the limit on the fiduciary exception in the beneficiary context applies with equal weight in the successor trustee context: when a trustee communicates with an attorney in the trustee's personal capacity on matters not of trust administration, disclosure of that communication may not be compelled by a successor trustee. *Borissoff v. Taylor & Faust*, 33 Cal.4th 523, 15 Cal.Rptr.3d 735, 93 P.3d 337, 343–44 (2004) ("A successor fiduciary becomes the holder of the attorney-client privilege 'only as to those confidential communications that occurred when the predecessor, in [its] fiduciary capacity, sought the attorney's advice for guidance in administering the trust.' Conversely, a successor fiduciary does not become the holder of the privilege for confidential communications that occurred when a predecessor fiduciary in [its] personal capacity sought an attorney's advice." (emphases omitted) (quoting *Moeller*, 69 Cal.Rptr.2d 317, 947 P.2d at 285)).

¶ 25 In this case, the Survivor's Trust Agreement provides that "[e]ach successor Trustee under this Trust Agreement shall have, exercise and enjoy all of the rights, powers and privileges, both discretionary and ministerial, as are herein and hereby given and granted unto the original

Trustee, and shall incur all of the duties and obligations imposed upon the original Trustee." Despite the fact that the Survivor's Trust Agreement exculpates Bank of Arizona as successor trustee from being "personally liable for any act or omission of any predecessor [trustee]," Northern Trust is required to turn over to Bank of Arizona all attorney-client communications made in a fiduciary capacity on matters of trust administration. The trial court erred by ordering Northern Trust to provide attorney-client communications to Bank of Arizona as successor trustee without considering whether Northern Trust made those communications in a corporate, nonfiduciary capacity on matters not of trust administration. The court further erred to the extent that it ordered Northern Trust to disclose those same communications to DBK, an asset of the Section 3.4 Trust that Northern Trust managed in its role as trustee. The petitioners argue that "the attorney-client privilege also passed from Northern Trust, as the manager of DBK, to Bank of Arizona, as the successor manager of DBK." Because the petitioners, including DBK, failed to raise this argument in their petition to compel or at the hearing on Northern Trust's motion to dismiss, we decline to address it on appeal. *Dillig v. Fisher*, 142 Ariz. 47, 51, 688 P.2d 693, 697 (App.1984) ("[A]ppellants did not raise [an] argument before the trial court and therefore cannot raise it for the first time on appeal.").

## CONCLUSION

¶ 26 We reverse the trial court's order granting the petition to compel and remand for further proceedings consistent with this opinion.

¶ 27 On remand, the trial court should conduct an in camera review of the e-mails Northern Trust seeks to withhold to determine whether it made those communications with Quarles & Brady in a fiduciary capacity on matters concerning trust administration or in a corporate capacity on matters relating to its own interests. *See State ex rel. Babbitt v. Arnold*, 26 Ariz.App. 333, 336, 548 P.2d 426, 429 (1976) ("[I]t is incumbent upon a trial court not to assume the facts which would give rise to a privilege, but rather, when a prima facie showing of a privilege is made, to decide whether disclosure should be required after an in camera inspection.").