## WASHINGTON–BALTIMORE NEWSPAPER GUILD, LOCAL 35, affiliated with the Newspaper Guild, AFL–CIO–CLC, et al., Plaintiffs, Plaintiff-Intervenors,

v.

## The WASHINGTON STAR COMPANY, et al., Defendants.

### Civ. A. No. 81–1980.

United States District Court,
District of Columbia.

July 16, 1982.

Robert E. Paul, Eisenberg & Paul, Arlington, Va., for plaintiffs.

Donald W. Savelson, Marvin E. Frankel, James H. Aibel, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

BARRINGTON D. PARKER, District Judge.

The plaintiffs in this proceeding are several former participants, and their union representatives, in the Evening Star Employees' Benefit Plan ("the Plan"). The lawsuit involves the disposition of some of the assets of the Plan, which was established in 1918 by the Washington Evening Star Company ("the Star"), publisher until 1981 of *The Washington Star.* The plaintiffs allege that in 1981 the defendants— the Plan, its trustees, and the Star [1]—illegally amended the Trust Agreement between the Plan's Trustees and its sponsor, the Star. The effect of the 1981 amendment was to provide for the reversion of surplus assets to the Star, rather than to the participants, upon termination of the Plan. The plaintiffs claim that, in so doing, the defendants breached their fiduciary duties imposed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), violated their contractual obligations to the participants, and committed fraud and deceit.

Although both parties have moved for summary judgment, those motions are not yet at issue. The plaintiffs seek to rely on an affidavit of a former counsel to the Plan, Fernando DiFilippo. The affidavit explains the factual background to a 1976 amendment to the Trust Agreement which, in contrast to the 1981 amendment, provided that the participants, not the Star, would receive any surplus assets. The defendants object to its filing, arguing that the proposed affidavit violates both the attorney-

1. The complaint also names as a defendant Time, Inc., which owns 100 percent of the vot- ing stock of the Star.

client privilege and the Canons of the Code of Professional Responsibility. The plaintiffs have therefore sought a ruling from this Court on this matter, and have submitted the proposed affidavit under seal. Both parties have also furnished memoranda on this question.[2]

For the following reasons, the Court rules that the plaintiffs may proffer the proposed affidavit in connection with the pending motion for summary judgment.

## THE FACTS

The background to this dispute may be briefly summarized. The plaintiffs claim that, following collective bargaining negotiations in 1976, the Star agreed to distribute to the Plan's participants or to their beneficiaries any surplus assets upon termination. This reversion agreement was incorporated into an amended Trust document.

On July 23, 1981, the Star management announced that it would cease publication of *The Washington Star*. Six days later, on July 29, 1981, the defendants adopted another amendment to the Trust document which provided that any surplus in the Plan would, upon termination, revert to the Star and not to the participants or their beneficiaries. The Plan was, in fact, later terminated.

The affiant, DiFilippo, was an associate in the Washington office of the Verner, Liipfert, Bernhard & McPherson law firm ("Verner, Liipfert") from May 1, 1976 until June 17, 1977. His affidavit explains the factual background to the 1976 Trust Agreement amendment which allegedly required the plaintiffs' receipt of the Plan's surplus assets. The affidavit provides details concerning (1) the scope and nature of DiFilippo's legal counsel to the Plan, (2) the process for amendment of the Trust document, (3) the position of the union representatives with respect to the 1976 amend-

ment, (4) the reason for the amendment prohibiting reversion, and (5) the reason that DiFilippo amended the Trust document but did not amend a parallel document, the Plan Agreement.

The defendants assert that the DiFilippo affidavit violates both the attorney-client privilege and the duties of confidentiality under the Canons of the Code of Professional Responsibility. Their legal argument is based on several factual premises. First, that during DiFilippo's association with Verner, Liipfert, the firm acted as general counsel to the Star and to the owner of the company. Second, that DiFilippo, along with other lawyers at the firm, provided legal services for both the Star and the Plan when the amendment was adopted in 1976. Third, that Verner, Liipfert performed work for the Plan and Trust as well as for the Star with no separation of legal services between these various activities. Fourth, that the Plan and Trust documents were unilateral creations of the employer, funded entirely by the Star; in addition, the Star appointed the Plan's Board of Trustees, all of whom were management personnel of the Star.

## LEGAL ANALYSIS

### A. *The Attorney-Client Privilege*

■ The attorney-client privilege, as this Court was quite recently called upon to note, "protects the oldest of the confidential relationships." *SEC v. Gulf and Western Industries, Inc.*, 518 F.Supp. 675, 680 (D.D.C.1981). The privilege applies if "the asserted holder of the privilege is or sought to become a client." *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 (D.Mass.1950). A central question in this dispute is whether the Star is properly viewed as DiFilippo's client for purposes of the privilege.

---

**2.** DiFilippo, who is neither a party nor counsel in this litigation, has moved for leave to file an affidavit as *amicus curiae*. In that affidavit he describes his involvement in this lawsuit and responds to statements made by counsel for the Star in their memorandum submitted on this matter. The statements, DiFilippo contends, "could be viewed as raising questions concerning my motives, integrity, and professional conduct in this matter." The Court believes that DiFilippo's contention has merit and will grant his motion.

■ The Star argues that its communications with the Verner, Liipfert firm were made for the purpose of securing legal advice in connection with the administration and structure of the Plan and that it, along with the Plan's trustees, were DiFilippo's client. The argument overlooks the peculiar role of an attorney for an employee benefit plan. Under ERISA, the trustees of an employee benefit plan are fiduciaries who owe an undivided duty of loyalty to the participants in the benefit plan. ERISA §§ 3(21), 403(a), 404(a)(1), 409, 29 U.S.C. §§ 1002(21), 1103(a), 1104(a)(1), 1109. When an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries. In *Riggs National Bank of Washington, D. C. v. Zimmer*, 355 A.2d 709 (Del.Ch.1976), the court surveyed the common law on this question and concluded that the beneficiaries have a right to a "knowledge of the affairs and mechanics of the trust management." *Id.* at 712. Thus, the court held that a trustee's claim of attorney-client privilege was unfounded.

> As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that *he* is personally being served. And, the beneficiaries are not simply incidental beneficiaries who *chance* to gain from the professional services rendered. The very intention of the communication is to aid the beneficiaries. The trustee here cannot subordinate the fiduciary obligations owed to the beneficiaries to

their own private interests under the guise of attorney-client privilege.

*Id.* at 713–14 (emphasis in original).

This same principle was applied in an action under ERISA, *Donovan v. Fitzsimmons*, 90 F.R.D. 583 (N.D.Ill.1981). There, the Secretary of Labor brought an action against several pension fund officials for breach of their fiduciary responsibilities.[3] The officials, relying on the attorney-client privilege, refused to provide various documents authored by the fund's counsel. The court held that the attorney-client privilege did not extend to this situation because fiduciaries "exercise their authority not for themselves but for the benefit of their beneficiaries."[4] *Id.* at 586. As authority for the holding, the court cited both the common law of trust relationships and a Fifth Circuit decision holding that a corporation cannot assert the attorney-client privilege in a shareholders' derivative suit upon a showing by the shareholders' of "good cause" for the information, *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971).[5] Indeed, so well settled was the law that, the court observed, the only "close question" in applying its analysis of the privilege was whether the Secretary of Labor "is sufficiently similar to the beneficiaries of the pension fund" as to bestow upon him the status of "client." *Id.* Of course, in this litigation, the Court is not confronted by a "close question," since the beneficiaries themselves are bringing this action.

■ The Star and the other defendants nevertheless argue that despite the forego-

---

**3.** The Secretary of Labor is so empowered under ERISA § 502(a), 29 U.S.C. § 1132(a).

**4.** *See also United States v. De Lillo*, 448 F.Supp. 840, 841 (E.D.N.Y.1978).

**5.** The *Donovan* court, relying on *Garner*, also required a "good cause" showing. Such a requirement, in this Court's view, is properly limited to a corporate setting, in which the management of a sizable corporation clearly cannot "pleas[e] all of its stockholders all of the time," and management requires "protection from those who might second-guess or even harass in matters purely of judgment."

*Id.* at 1101. In a trustee relationship, on the other hand, there exists no legitimate need for a trustee to shield his actions from those whom he is obligated to serve. In other words, while corporate managers perform duties which "run to the benefit *ultimately* of the stockholders," *Id.* at 1101 (emphasis added), a pension plan trustee *directly* serves the fund beneficiaries. Moreover, no such showing of "good cause" has ever, to our knowledge, been required under the common law of trusts. This Court, therefore, rejects this aspect of the *Donovan* decision.

ing, the facts of this case require retention of the privilege. They distinguish *Donovan* on the ground that the trustees there operated a union fund, while in this case the Plan was established and funded by the Star and administered by Trustees appointed by the Star. Additionally, they note that Verner, Liipfert represented both the Star and the Plan, without the erection of a "Chinese Wall," and, they recite, DiFilippo himself worked for the Star as well as for the Plan.[6] Because of these factors, they contend that the privilege must be extended to this case, as a matter of "sound public policy," in order to protect the confidences and secrets of the employer.

The argument overlooks a crucial aspect of the legal status of employee benefit plans under ERISA. The Act established, in clear and unmistakable terms, that a pension fund is an independent entity, separate from the employer. To safeguard pension assets, ERISA includes elaborate rules concerning the identity of the fiduciary, the standards of care to which he must adhere, the scope of permissible transactions with regard to plan funds, reporting and disclosure requirements, and criminal and civil liability for violations of these standards. ERISA §§ 402(a)(2), 404, 406—08, 401—07, 501—02, 29 U.S.C. §§ 1102(a)(2), 1104, 1106—08, 1101—07, 1131—32. It would defy logic to conclude that, in spite of these rules, an employer who creates and funds an employee benefit fund thereby bypasses the rigors of the congressional enactment. In fact, sound public policy compels precisely the opposite conclusion from that urged by the Star—namely, that despite an employer's close involvement with and funding of the Plan, it nevertheless exists as a fully separate legal entity.

The lack of a "Chinese Wall" at Verner, Liipfert, and the firm's simultaneous representation of the Plan and the Star, does nothing to alter this conclusion. An employer cannot, by retaining the same counsel as that used by the plan, defeat disclosure by a plan's attorney of communications between the plan's trustees and the employer. The case law clearly holds that when an attorney represents two parties who later become involved in litigation, neither party may assert the attorney-client privilege. 8 Wigmore, *Evidence*, § 2312 (McNaughton rev. 1961); *Garner v. Wolfinbarger*, 430 F.2d at 1103 (citing cases).

One commentator has stated that "the concept of the pension plan as a separate entity under ERISA may be difficult for some attorneys to accept since they formerly provided advice for a plan as a consequence of their services for the employer." Note, *Attorney Liabilities Under ERISA*, 82 W.Va.L.Rev. 129, 145 (1981); Bartlett, *Who Are Fiduciaries?* (panel discussion), 31 Bus.Law 83, 94 (1975). However, as "difficult" as that concept may be for the Star to accept, the Star should have secured separate legal counsel had it sought to maintain confidentiality in its communications about the Plan. *See* Note, *supra* at 145. It did not do so, and thus it cannot now argue that its communications to the Plan's attorney were privileged.[7]

## B. *Canons of Ethics*

The defendants also contend that even if the attorney-client privilege does not apply here, the DiFilippo affidavit nevertheless breaches the Canons of the Code of Professional Responsibility. They rely on Canon

---

**6.** This point is the subject of some dispute. DiFilippo states that he provided counsel exclusively to the Plan Trustees and to certain other employee benefit funds in order to provide the Trustees with "independent legal advice to the extent this was possible." Aff., Para. 2. The Star has submitted exhibits, however, which suggest that DiFilippo performed work for the Star as well as for the Plan. Even if the Star's version is correct, this Court, as will be seen below, rejects application of the privilege in this context.

**7.** The plaintiffs argue that even if the Star could qualify as a client entitled to assert the attorney-client privilege, the proposed affidavit reveals no communications made by the Star in confidence to DiFilippo. A review of the affidavit suggests to this Court that the plaintiffs are correct. However, in light of the above analysis, a detailed examination of this issue is not necessary.

4, which requires a lawyer to preserve the confidences and secrets of a client; Canon 5, which requires an attorney to exercise independent professional judgment on behalf of a client; and Canon 9, which commands a lawyer to "avoid even the appearance of professional impropriety."

 The defendants' arguments must be rejected. They cite no case authority holding that the Canons impede a disinterested attorney from providing information not protected by the attorney-client privilege and relevant to the merits of a legal claim. The Canons properly relate to the question whether an attorney may, for his own benefit and for a fee, represent a former client's adversary or instigate litigation against it. *See e.g., Emle Industries v. Patentex*, 478 F.2d 562 (2d Cir. 1973); *Housler v. First National Bank of East Islip*, 484 F.Supp. 1321 (E.D.N.Y.1980). As McCormick states: "Unless the lawyer-witness is acting as counsel in the case on trial, there is no violation of the Code of Professional Responsibility." McCormick's *Handbook of the Law of Evidence*, § 94 at 196 (Cleary rev. 1971). DiFilippo is not representing the plaintiffs in this lawsuit. In addition, as discussed above, the participants, not the Star, are properly viewed as DiFilippo's former client in this context. Therefore, the Canons are inapplicable.

### CONCLUSION

For the foregoing reasons, the defendants' objections to the proposed affidavit of Fernando DiFilippo are denied. An appropriate order accompanies this Memorandum Opinion.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is this 15th day of July, 1982,

ORDERED that the defendants may not invoke the attorney-client privilege or the Code of Professional Responsibility with respect to the proposed affidavit of Fernando DiFilippo, submitted under seal to this Court; and it is

FURTHER ORDERED that Fernando DiFilippo's Motion for Leave to File Affidavit of Fernando DiFilippo as *Amicus Curiae* is granted; and it is

FURTHER ORDERED that the plaintiffs shall file a legal memorandum of points and authorities in support of their Motion for Summary Judgment by August 2, 1982.