**WASHINGTON–BALTIMORE NEWSPAPER GUILD, LOCAL 35, Plaintiff,**

v.

**The WASHINGTON POST COMPANY, Defendant.**

**Civ. A. No. 85–0559.**

United States District Court, District of Columbia.

Nov. 6, 1985.

Robert E. Paul, Paul & Thompson, P.C., Arlington, Va., for plaintiff.

Richard C. Hotvedt, D. Michael Underhill, Washington, D.C., for defendant.

## OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment, defendant's opposition thereto and cross-motion for summary judgment, supplemental briefing by both parties on the respective motions, and the entire record herein. For the reasons stated below, the Court grants in part and denies in part plaintiff's motion for summary judgment and grants in part and denies in part defendant's cross-motion for summary judgment.

### Findings of Fact

Plaintiff Washington-Baltimore Newspaper Guild, Local 35 ("Guild") is an unincorporated association and labor organization which represents employees of a number of employers for collective bargaining purposes. In this action, the jurisdiction of the Guild extends to "all employees ... in the Advertising, Business, Circulation, Editorial, and News Departments, the maskers and scalers of the Engraving Department, and composing room assistants of the newspaper, The Washington Post," with certain exceptions. Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue ("Plaintiff's Facts") ¶ 4. Defendant The Washington Post Company ("The Post") is a corporation organized under the laws of the State of Delaware with its headquarters in Washington, D.C. Defendant owns and publishes *The Washington Post,* a daily and Sunday newspaper of general circulation.

The Post and the Guild have been parties to a series of collective bargaining agreements over the years, including an agreement which became effective by its terms from July 10, 1979 through July 9, 1982 ("1979 Agreement"). Plaintiff's Facts ¶ 3; Defendant's Statement of Material Facts as to Which There Is No Genuine Issue ("Defendant's Facts") ¶¶ 3, 6.

In September 1980, during the term of the 1979 Agreement, The Post installed and made operational a new video display terminal (VDT) computer news system manufactured by Raytheon Corporation. Complaint, Exhibit D at 16; Memorandum of Points and Authorities in Opposition to Plaintiff's Supplemental Motion for Summary Judgment and In Support of Defendant's Supplemental Motion for Summary Judgment ("Defendant's Opposition to Plaintiff's Supplemental Motion for Summary Judgment") at 6. As the newsroom began to utilize this equipment for the publication of the newspaper, copy editors and chief copy editors (also known as "slot persons") were assigned duties different from and additional to the editing duties which had constituted the nature of their respective positions. These slot persons now were given the task of area composition, which entailed arranging the copy precisely as it would appear in the page. The Guild, through its representatives, filed a grievance with the Post, pursuant to Article XXII of the 1979 Agreement, on the ground that The Post had effectuated a substantial change in the duties and responsibilities of the position of copy editor and slot person without following the requirements of Article VI, Section 6(b) of the contract, and seeking a wage increase for those employees whose jobs were affected by the new VDT system. Plaintiff's Facts ¶ 8; Defendant's Facts ¶ 10.

When the matter could not be resolved by the parties, they submitted the issue to arbitration. James V. Altieri, Esquire, was selected by the parties to hear and resolve the controversy. Nine days of hearings were held in Washington, D.C., between May 1982 and June 1983. Both parties submitted post-hearing memoranda to the arbitrator which presented their respective positions concerning whether there had been a substantial change and whether a wage increase was proper.

During the time that the briefs were submitted, the parties also were engaged in negotiations for the purpose of agreeing to a collective bargaining agreement to succeed the 1979 Agreement. Although the stated termination date of the 1979 Agreement was July 9, 1982, the parties continued to abide by the contract's terms and

provisions for over a year after this date, pursuant to the "evergreen clause" of Article XXIII(1), because neither the Guild nor The Post gave the requisite notice.

Article XXIII(1) of the 1979 Agreement states:

This Agreement shall be effective from July 10, 1979 to July 9, 1982, and thereafter, but it shall be terminated, and all terms and provisions shall become null and void, in the event of (1) a strike called by the Guild, or (2) a lockout declared by The Post, or (3) five (5) days written notice by either party at any time after thirty (30) days following July 9, 1982 to the other of its termination of the Agreement.

Complaint, Exhibit A at 60. Subsequently, The Post gave the required notice under the "evergreen clause" on September 9, 1983, and terminated the terms and provisions of the 1979 Agreement.[1]

The parties executed a successor collective bargaining agreement on November 28, 1983 ("1983 Agreement"), which is currently in effect and will run through July 9, 1986. The 1983 Agreement contains general salary increases for The Post employees including those employees covered by the Guild's grievance. These increases were retroactive to July 12, 1982, the first day of the first pay period following the stated expiration date of the 1979 Agreement, July 9, 1982.

Shortly after the execution of the 1983 Agreement, Arbitrator Altieri issued an Interim Opinion and Award as to the grievance filed by the Guild. The arbitrator concluded that the imposition of the additional duties and responsibilities on copy desk personnel violated Article VI, Section 6(b) of the 1979 Agreement. The Award

also provided the parties with a sixty-day period to develop their own remedy, after which time either party could petition the arbitrator for a remedy which would be binding on the parties.

The parties, however, could not agree on an appropriate amount of compensation for the new duties. The Post maintained that the wages should not be changed, or if a change were appropriate, that the wages should be decreased. The Guild continued to argue that a wage increase was owed from the date the grievance had been filed. Thereafter, the Guild asked the arbitrator to issue a final Opinion and Award, and to order whatever remedy, if any, was appropriate. In response to the Guild's request, The Post sent a letter to Arbitrator Altieri arguing that, assuming *arguendo* that some wage alteration were appropriate, the execution of the successor collective bargaining agreement on November 28, 1983, and the accompanying bargaining history precluded the arbitrator from altering wage rates for the period encompassed by the new collective bargaining agreement.

Both parties argued their respective positions at a hearing held before the arbitrator on October 2, 1984. After submission of post-hearing memorandum, Arbitrator Altieri issued his Final Opinion and Award on December 19, 1984, which again held that there had been a substantial change in the duties and responsibilities of the copy editors and slot persons, and found that this change entitled these employees to a five percent wage increase beginning on September 1, 1980, through July 9, 1982. Complaint, Exhibit N at 12. However, the arbitrator also held that the wage provisions in the new collective bargaining agreement set and controlled the wage rates for these employees subsequent to

---

**1.** The Guild and The Post disagree as to the actual effective date of the contract termination. The Post asserts that the contract terminated five days after it tendered the notice or on September 14, 1983. Defendant's Statement of Material Facts as to Which There Is No Genuine Issue ¶ 7. The Guild's position, however, is that the notice was not effective until it was received, and since it was not received by the Local until September 13th, the termination be-

came effective on September 18, 1983. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment at 27, n. 7.

Given the Court's disposition of this matter, it finds that the effective date of the contract termination is not a genuine issue of material fact which precludes the granting of summary judgment.

July 9, 1982, the stated termination date of the 1979 Agreement. *Id.* at 10.

The Guild disagreed with the latter part of the arbitrator's Award and, by letter, sought The Post's agreement to resubmit this issue to the arbitrator. The Post declined and the Guild instituted this civil action.

In its original complaint, the Guild asked this Court to vacate that portion of the arbitrator's Opinion and Award which terminated backpay liability as of July 9, 1982, and order The Post to calculate backpay through September 1983, or alternatively, remand the proceeding to the arbitrator for a revision of his Opinion and Award. The Guild amended its complaint after The Post notified it in mid-May 1985, that no department (thus no copy editor or slot person) had converted to *area composition* prior to March 1, 1981. Consequently, The Post submitted a list of the eligibility dates for those employees who The Post believed were entitled to compensation pursuant to Arbitrator Altieri's Award to the Guild for review. The Guild took the position that *all* copy editors and slot persons should receive extra backpay for work performed after September 1, 1980, and amended its complaint to include this allegation.

Thereafter, both the Guild and The Post filed motions for summary judgment and submitted supplemental briefing on the respective motions.

### Conclusions of Law

It is plain that summary judgment may be granted only when it is shown that a moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, "summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir.1967). "[A] court should confine its inquiry to determining whether genuine, triable issues of fact exist, and should not attempt prematurely to resolve bonafide factual disputes under the guise of a Rule 56 disposition." *Newspaper Guild Local 35 v. Washington Star*, 543 F.Supp. 906, 113 LRRM (BNA) 3133, 3135 (D.C.D.C.1982) (citation omitted). The moving party bears the burden of demonstrating that there are no genuine issues of material fact and that, accordingly, the movant is entitled to judgment as a matter of law. *Id.* 543 F.Supp. 906, 113 LRRM (BNA) at 3135. In the instant matter, both parties have moved for summary judgment and concede that there are no genuine issues of material fact. Accordingly, it is appropriate to dispose of the instant case through summary judgment.

Since the Supreme Court's decisions in the Steelworkers Trilogy, the law is well settled that a court's role in reviewing an arbitration award is limited to determining whether the award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). This standard prohibits courts from reviewing the merits of an arbitration award. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal labor policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Id.* at 596, 80 S.Ct. at 1360. Arbitration "is faster, cheaper, less formal, more responsive to industrial needs, and more conducive to the preservation of ongoing employment relations than is litigation." *Safeway Stores v. Local 400*, 118 LRRM (BNA) 3419, 3421 (1985) (citation omitted). In recognition of its utility, courts traditionally have refused to become another layer of review and cause of delay. *Office and Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority*, 724 F.2d 133, 137 (D.C.Cir. 1983).

A reviewing court's inquiry is limited to a determination of "whether the parties consensually committed the issue to arbitration and whether the arbitrator rested his decision on an interpretation of the

collective bargaining agreement." *Newspaper-Guild v. BNA*, 97 LRRM (BNA) 3068, 3069 (1978) (citation omitted). Under the law of the District of Columbia Circuit, "[t]he case must present egregious deviations from the norm before [the courts] will abandon the firmly-established principle of deference." *Safeway Stores v. Local 400*, 118 LRRM at 3421.

■■■■ Deference to arbitration awards, however, does not grant the arbitrator unrestrained authority. Arbitration is a contractual matter and the arbitrator's authority is limited by the terms of the arbitral agreement. *Davis v. Chevy Chase Financial Limited*, 667 F.2d 160, 165 (D.C.Cir. 1981). An arbitrator's authority is confined to interpreting and applying the collective bargaining agreement, and he may not "dispense his own brand of industrial justice" by substituting his view of what the parties to an agreement should have agreed to for what the parties actually agreed to. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361.

The arbitration award in question provides, in pertinent part, that

> All Copy Editors and Slot Persons in the employ of the Publisher during the period between September 1, 1980 and July 9, 1982 shall be paid an additional amount equal to five (5%) percent of what they earned in this period.

Complaint, Exhibit N at 12.

Plaintiff in the instant action argues that the arbitrator's ruling that the period of backpay ceases on July 9, 1982, is contrary to the evidence before him and violates the express terms of the 1979 Agreement. It asks this Court to vacate that portion of Arbitrator Altieri's Award or alternatively, remand this matter to the arbitrator for reconsideration of his findings as to the period of backpay liability.

According to plaintiff, the period of backpay liability runs between September 1, 1980, the date the Raytheon system became operational, and sometime in September 1983, preferably September 17th, the day before The Post terminated the 1979

Agreement under the "evergreen clause." It contends that since negotiations of the 1983–1986 Agreement were continuing as of July 1982, the terms of the 1979 Agreement remained in full force until The Post gave notice in September 1983. The Guild also takes a literal approach as to the coverage of the award. It contends that Arbitrator Altieri intended that *all* copy editors and slot persons employed by The Post during the backpay liability period were entitled to backpay regardless as to whether they actually performed area composition duties during that time.

Defendant, on the other hand, seeks "affirmance" of the arbitrator's award, but limits the backpay liability to the period between March 1, 1981, the date it claims that area composition duties were first performed by the affected employees, and July 9, 1982, the stated date of expiration of the 1979 Agreement. It interprets the language of the award as only setting out a period of *potential* backpay liability and insists that a literal reading of the award was not intended by Arbitrator Altieri.

■■■ After close examination of the entire record, the Court finds that the award in this case clearly "draws its essence" from the collective bargaining agreement. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 599, 80 S.Ct. at 1362.

Article XXII of the 1979 Agreement provides for a grievance and arbitration procedure for the resolution of contractual disputes.

Article VI, Section 6(b) of the 1979 Agreement states:

> (6)(b). In the event The Post creates a new position or substantially alters the nature of an existing job within the bar-

gaining unit, and the duties of the new or altered position are similar to those of an existing classification for which a salary scale has been established, The Post agrees to inform the Guild, in accordance with Article XVII, Section 9(b), and upon request to meet with the Guild to discuss its decision in the event the Guild questions the classification. In the event the Guild does not agree, it may challenge the classification of the new or altered position through the Grievance Procedure set forth in Article XXII.

In the event The Post creates a new position or substantially alters the nature of an existing job within the bargaining unit, and the duties of the new or altered position substantially differ from those of any existing classification for which a salary scale has been established, The Post agrees to notify the Guild before a classification is assigned to the new or altered position, and to seek in good faith to reach an agreement upon the appropriate classification and salary scale. In the event the parties fail to reach agreement, The Post may then assign a classification and salary scale to the new or altered position and the Guild may challenge this determination under Article XXII.

Complaint, Exhibit A at 19–20.

In his Interim Opinion and Award, Arbitrator Altieri determined that Article VI(6)(b) applied to the dispute between the Guild and The Post since there had been a substantial alteration in the copy editor and slot person positions due to the introduction of the Raytheon system. Complaint, Exhibit D at 28. He then found that The Post had violated the notice provision by not providing "advance notice to the Union of its intention to implement the change and giv[ing] the Union an opportunity to discuss and negotiate the effect of the change, prior to its implementation." *Id.* at 29.

Arbitrator Altieri adopted the suggestion of the Guild and remanded the matter to the parties to negotiate and resolve their differences. The award further provided that "[i]f they [were] unable to reach agreement within sixty (60) days of receipt of this award, either party may, upon notice to the other, request of the arbitrator that he issue his final award." *Id.* at 33. In remanding the matter, the arbitrator stated that,

The undersigned has reached some conclusions *with respect to whether any increases in rates are, in fact, called for;* whether, if increases were granted, they would be applicable only to the minimum weekly salaries set forth in Article VI; *whether, if increases were granted, they should be prospective only or retroactive;* and whether Article VI(6)(b)'s requirements were fully met by the Post, as it maintains, when it stood ready, at all times, "upon request to meet with the Guild to discuss the matter".

The arbitrator wishes to stress the caveat, that neither side should derive any inference as to what his final award is apt to be, from the findings reflected in this interim award. I will, nonetheless, adopt the suggestion of the Union, and *first issue a preliminary award, returning the matter to the parties, where it belongs, for them to resolve through the collective bargaining process.* It is in the hope that the parties will finally succeed in resolving, for themselves, the question presented, that I adopt the suggestion of the Union, in rendering this interim award. *I believe it to be to the mutual advantage of the parties to resolve, through collective bargaining, whatever differences they have on the subject, and not leave it to this arbitrator to impose upon them a result that they are likely to be unhappy with.*

Complaint, Exhibit D at 32 (emphasis added).

It was only when the parties failed to reach an agreement about the rate of pay for the affected employees that Arbitrator Altieri issued his Final Opinion and Award. In doing so, he dismissed the Guild's argument that the period of backpay liability should extend through September 1983, the

effective date of termination of the 1979 Agreement. He held that the Guild did not have any rights with respect to rates to be paid subsequent to July 9, 1982, and fixed in the new 1983–86 Agreement since it did not succeed through the bargaining process in achieving agreement on such rates. *Id.* at 11.

> What the arbitrator is asked to do by the Guild involves more than interpreting Article VI(6)(b). He has been asked to establish the appropriate salary differentials for the Copy Editors and Slot Persons, in the light of his finding that, during the term of the agreement, there has been a substantial alteration in the nature of their duties. The determination of the rates appropriate by reason of changes implemented during the term of the agreement, is a legislative function that does not deprive the parties of their right, when the time arrives for negotiating a new agreement, to bargain for the best terms their economic strength makes possible.
>
> *Unless the parties, by mutual consent, adopt in a successor agreement the rates that were fixed in an arbitration proceeding, or, unless, at the time that authority is given to an arbitrator, to establish rates, it is the mutual understanding of the parties that any rates fixed by him would extend beyond the term of the agreement, his ruling cannot deprive a party of the right to bargain for different rates in the successor agreement.*

*Id.* at 10–11 (emphasis added).

The Court finds that "it is quite [p]ossible for an honest intellect to interpret the words of the contract and reach the result which the arbitrator reached." *Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Star Co.,* 94 Lab.Cas. (CCH) ¶ 13,514 (D.D.C.1981) (*quoting Union Employers Division of Printing Industry v. Columbia Typographical Union No. 101,* 353 F.Supp. 1348, 1349–50 (D.D.C.1973), *aff'd* 492 F.2d 669 (D.C.Cir.1974) (without opinion) ). The Guild was aware that if no agreement could be reached between itself and The Post that the arbitrator would decide, *inter alia,* what rate increase, if any, was warranted. Moreover, it was the Guild that suggested that the arbitrator remand the matter to the parties to give them a chance to settle the dispute.

The Guild also had the opportunity, through the collective bargaining process, to negotiate an additional rate increase for the affected employees for the period subsequent to July 9, 1982, but failed to do so. It cannot now ask the Court to do for it what it chose not to do. This is especially true given the courts' traditional deference to arbitration awards. "An arbitration award must stand if some support for its basis exists in the record." *Devine v. White,* 697 F.2d 421, 436 n. 80 (D.C.Cir. 1983). The Court finds that the arbitrator did not abuse his authority in granting his Final Opinion and Award and that the portion of the award which terminates backpay liability on July 9, 1982, clearly "draws its essence" from the 1979 collective bargaining agreement.

■ In addition, the Court finds that The Post's contention that the arbitration award only sets out a period of *potential* backpay liability is meritless. The Post argues that Arbitrator Altieri did not intend a literal reading of that portion of the award which grants backpay to *all* copy editors and slot persons employed during the stated period. "The Post believes that the proper interpretation of the Award is that copy editors and slot persons are entitled to additional compensation only for the *actual time* between September 1, 1980 and July 9, 1982 that they performed *area composition duties.* " Defendant's Opposition to Plaintiff's Supplemental Motion for Summary Judgment at 15 (emphasis added). After an extensive investigation, The Post concluded that it would pay copy editors and slot persons compensation as of March 1, 1981, to ensure that all copy editors and slot persons received at least all the compensation owed. The Post explains that March 1, 1981 was selected "because it was the earliest date that The Post's inves-

tigation revealed that *anyone* in the affected class of employees began performing area composition duties." *Id.* at 29.

It appears to the Court that Arbitrator Altieri was aware that although the Raytheon system was first used for production on September 1, 1980, some of the affected employees may not have actually performed any area composition duties until a subsequent date. Nonetheless, he decided to award backpay to all copy editors and slot persons employed by The Post between September 1, 1980, and July 9, 1982. Mr. Altieri was the mutually agreed upon arbitrator in this dispute between the parties and he decided the matter based on his expertise and experience with collective bargaining agreement disputes. When The Post agreed to submit this matter into this arbitrator's hands, it agreed to be bound by his decision. The Court, therefore, refuses to allow The Post to eviscerate the backpay award to *all* copy editors and slot persons and thus affirms the arbitrator's Final Opinion and Award.

### Conclusion

"By vacating [any portion] of the arbitration award in the instant action, the Court would be intruding upon the authority of the arbitrator to interpret the collective bargaining agreement...." *Safeway Stores v. Local 400,* 118 LRRM (BNA) at 3426.

An appropriate order is attached.

### ORDER

Upon consideration of plaintiff's motion for summary judgment, defendant's opposition thereto and cross-motion for summary judgment, supplemental briefing by both parties on the respective motions, the entire record herein, and for the reasons set forth in the accompanying opinion, it is by the Court this 6th day of November 1985,

ORDERED that plaintiff's motion for summary judgment is granted as to that portion seeking affirmance of September 1, 1980 as the commencement date of The Post's period of backpay liability; it is further

ORDERED that plaintiff's motion for summary judgment is denied as to that portion asking the Court to vacate the part of the arbitrator's Final Opinion and Award which terminates backpay liability on July 9, 1982; it is further

ORDERED that defendant's cross-motion for summary judgment is granted as to that portion seeking affirmance of the arbitrator's Final Opinion and Award; it is further

ORDERED that defendant's cross-motion for summary judgment is denied as to that portion seeking to limit The Post's period of backpay liability to March 1, 1981, through July 9, 1982; and it is further

ORDERED that this case is dismissed with prejudice.