**Elouise Pepion COBELL, et al., Plaintiffs,**

v.

**Gale A. NORTON, Secretary of the Interior, et al., Defendants.**

**Civ.A. No. 96–1285 RCL.**

United States District Court, District of Columbia.

Dec. 23, 2002.

---

---

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on defendants' motion for a protective order regarding the application of attorney-client privilege and work-product doctrine [1593],

which was filed on November 5, 2002. Upon consideration of this motion, the opposition thereto, defendants' reply brief, the oral arguments of counsel, and the applicable law, the Court finds that defendants' motion should be denied.

## I. BACKGROUND

Defendants seek to prevent discovery relating to "(1) communications to or from their attorneys concerning anticipated or ongoing litigation between beneficiaries and defendants in their capacity as trustees, and (2) documents prepared with, for or by their attorneys because of this litigation." Defs.' Mot. for Protective Order at 1. Although defendants have referenced no specific document or communication with respect to which they are asserting any privilege in their motion, both during oral argument and in their reply brief, defendants indicated that they brought the instant motion in response to a particular question posed by plaintiffs to Associate Deputy Secretary James E. Cason.

On November 5, 2002, while deposing Mr. Cason, plaintiffs' counsel inquired about his understanding of the nature and scope of the Interior Department's fiduciary duty in the management of the trust after discussing the duties and responsibilities of a trustee with counsel. Defense counsel instructed Mr. Cason not to answer the question, and the Special Master–Monitor, sitting as referee, overruled the instruction and directed Mr. Cason to respond. Transcript of Deposition of James E. Cason, November 5, 2002 ("Depo. Tr.") at 40–41.[1] The parties subse-

quently brought the issue before this Court, seeking a determination that would provide guidance not only regarding that single question, but also with respect to anticipated future deposition questions by plaintiffs relating to communications between defendants and their trust counsel.

Defendants assert that the question posed by plaintiffs' counsel to Mr. Cason requires disclosure of information that triggers the attorney-client privilege because all, or virtually all, of the communications between the trustee and counsel, whether related to trust administration or otherwise, occurred during litigation, and thus are "litigation-related" communications. Additionally, defendants claim that although the communications relate to trust administration, they also involve matters *other than* trust administration. Plaintiffs respond that the so-called "fiduciary exception" to the attorney-client privilege defeats the applicability of those privileges; defendants counter that such a proposition is appropriate only to the extent that the communication *exclusively* embodies issues related to trust administration.

## II. ANALYSIS

It is apparent from defendants' motion and from their oral argument that they do not seek a determination of privilege with respect to any particular discovery requests other than the question posed to Mr. Cason. Rather, defendants seek a broad ruling as to the "scope of the defendants' common law litigation privileges."[2] Transcript of Mo-

---

**1.**

> Q. The attorneys have never informed you that court decisions, common law, have an impact on how you manage the trusts; is that a fair statement?
>
> MS. SPOONER: Objection, protected by the attorney-client privilege, and I'm instructing you not to answer.
>
> MR. KIEFFER: Overruled.
>
> MS. SPOONER: I'm sorry?
>
> MR. KIEFFER: I said overruled. Answer the question, please.
>
> MS. SPOONER: We need to take this to the Court.

**2.** At oral argument, defendants also asserted a constitutional right to consult with counsel, claiming that if the Court adopts a "fiduciary exception" to the common law privileges, that

right will be forfeited. Hearing Tr. at 3. Because this issue has neither been formally raised nor briefed, the Court will not address it, except to note that nothing in the instant opinion vitiates defendants' right to assert their right to counsel. At all times, defendants retain the right to engage in protected communications with counsel about their potential personal liability, civil or criminal, as well as the right to enjoy the benefits of counsel's work product to aid them in responding to litigation directed against them personally. They are also free to communicate with government counsel about non-fiduciary or sovereign matters. What they may not do is employ the fiction that they are acting in the interests of the trust beneficiaries rather than their own in procuring such legal advice.

tions Hearing, November 5, 2002 ("Hearing Tr."), at 2. Before the Court rules upon the issues raised by defendants' motion, it will be necessary to set forth an explication of the law of privileges as it relates to fiduciaries.

### A. Attorney–Client Privilege

■ "The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 148 F.3d 1100, 1103 (D.C.Cir.1998). Defendants assert that all communications made between their attorneys and them during the pendency of litigation are protected under this privilege. Generally speaking, this would be true; however, as defendants concede, communications between a trustee and its attorneys concerning the administration of the trust fall within the "fiduciary exception" to the privilege.

The "fiduciary exception" to the attorney client privilege was first recognized in this country by the Delaware Court of Chancery in a seminal 1976 opinion holding that trust beneficiaries are entitled to inspect opinions of counsel procured by the trustee to guide him in administration of the trust. *See Riggs National Bank v. Zimmer*, 355 A.2d 709, 712 (Del.Ch.1976) (*quoting* 2 Scott on Trusts § 173, at 1407 (3d ed.1967)). Since that time, federal courts, including this Court, have uniformly recognized the existence of a fiduciary exception.[3] The case of *Washington–Balti-more Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F.Supp. 906 (D.D.C. 1982) explained the rationale behind this exception:

> As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served. And, the beneficiaries are not simply incidental beneficiaries who chance to gain from the professional services rendered. The very intention of the communication is to aid the beneficiaries. The trustee here cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege.

*Id.* at 909 (quoting *Zimmer*, 355 A.2d at 713–14)..

■ The party that asserts the existence of the attorney-client privilege possesses the burden of demonstrating its applicability. *Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207, 213 (D.C.Cir.1980). Not only the privileged relationship but all essential elements of the privilege must be shown "by competent evidence and cannot be 'discharged by mere conclusory or ipse dixit assertions.'" *See Martin v. Valley National Bank of Arizona*, 140 F.R.D. 291, 302 (S.D.N.Y.1991) (internal citation omitted). It follows that where the "fiduciary exception" is at issue, the proponent of the privilege retains the burden to demonstrate the applicability of the privilege.

**3.** *See United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir.1999) ("The Ninth Circuit ... has joined a number of other courts in recognizing a 'fiduciary exception' to the attorney-client privilege."); *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir.1997)("*LILCO*") ("[T]he ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan."); *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir.1992) ("[A]n ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration."); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103–04 (5th Cir.1970) ("[W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stock-holders to show cause why it should not be invoked in the particular instance."); *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 4 (D.D.C.1995) ("[I]t is established that a plan administrator cannot assert the attorney-client privilege to protect communications relating to plan administration from disclosure to the trust's beneficiaries because the beneficiaries are the true clients."); *Washington–Baltimore Newspaper Guild v. Washington Star Co.*, 543 F.Supp. 906, 909 (D.D.C. 1982) ("When an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries."); *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 609 (N.D.Ca.2000) ("[W]hile generally, the fiduciary exception applies to matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains to protect itself from liability.").

Ultimately, the existence of the privilege hinges on a finding that the trustee asserting the privilege sought advice or engaged in communication that did *not* benefit the trust beneficiaries. The trust beneficiaries should not, however, be required to demonstrate that the trustee was acting in a non-trustee capacity in order to defeat the privilege. *See Washington Star*, 543 F.Supp. at 909 n. 5 (rejecting a requirement of "good cause" to "pierce" the privilege in a trust context). And because privileges must be construed narrowly, the trustee seeking to foreclose a beneficiary's inquiry into trust administration must bear the burden of showing that he or she acted in a capacity that rendered the privilege applicable. *See LILCO*, 129 F.3d at 272 ("[A]n employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration"); *Wildbur*, 974 F.2d at 645 ("[A]n ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration"); *Petz v. Ethan Allen*, 113 F.R.D. 494, 497 (D.Conn.1985) (explaining that an ERISA fiduciary may not raise attorney-client privilege against a beneficiary); *Washington Star*, 543 F.Supp. at

908–10. Accordingly, where communications between trustees and their attorneys exclusively concern the administration of the trust, no attorney-client privilege is involved because the trust beneficiaries are the attorneys' clients. *Everett*, 165 F.R.D. at 4; *In re Grand Jury Proceedings, Grand Jury No. 97–11–8*, 162 F.3d 554, 556–57 (9th Cir.1998).

The more difficult question presented here is whether a privilege exists when the communication does not *exclusively* concern the administration of the trust or other matters implicating the trustees' fiduciary duty.

Defendants assert that, when a trustee communicates with attorneys, "as long as the attorney-client communications concern the litigation, the fiduciary exception to the attorney-client privilege does not apply—even if the communications also touch on trust administration." Defs' Mot. for Protective Order at 3. Therefore, defendants argue, because most of its communications with its attorneys during the pendency of this litigation "have related to litigation," all such communications are entitled to a presumption of immunity to the fiduciary exception. *Id.* However, none of the cases cited by defendants stand for such a proposition.[4] It would

---

4. The court in *Everett* did state that "attorney-client privilege ... does attach to attorney-client communications with respect to the nonfiduciary activities of the employer." 165 F.R.D. at 4. However, the court denied the employer's motion for a protective order because it had failed to show that any of the documents sought by plaintiffs "relate[d] *solely* to its nonfiduciary activities or to the formation, amendment or termination of the pension plan." *Id.* (emphasis in original).

In *Martin*, a bank trustee had refused to turn over documents pertaining to communications it had made with its attorneys, citing attorney-client privilege. The district court found that the fiduciary exception applied to all documents except those relating to communications about a Labor Department investigation of the trustee. *Martin*, 140 F.R.D. at 327. Responding to the trustee's arguments, the court stated:

> Furthermore, the trustee's allegations, if true, reflect serious failings by the Bank in carrying out its fiduciary obligation as Trustee ... I also note that the communications that would be encompassed within the fiduciary exception do not reflect advice concerning this litigation, and [the trustee] has not shown that the disclosure would reveal any trade secrets or otherwise adversely affect the Trust.

*Id.* at 326. This little bit of dicta certainly does not stand for the principle that "as long as the attorney-client communications concern the litigation, the fiduciary exception to the attorney-client privilege does not apply—even if the communications also touch on trust administration." Defs' Motion at 3.

The *LILCO* case also contains no suggestion of a presumption against the application of the fiduciary exception. Instead, that case notes that "[t]he sound proposition that may be drawn from *Washington Star* is that when the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on *non*-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters." *LILCO*, 129 F.3d at 272 (emphasis in original).

Even the two cases cited that argued against a broad construction of the fiduciary exception did not find that a presumption should lie against the application of the exception. *Hudson v. General Dynamics*, 73 F.Supp.2d 201 (D.Conn.1999), never mentioned any such presumption. That case simply noted that " '[t]he employer's ability to invoke the attorney-client privilege to resist disclosure turns on whether or not the communi-

be extraordinary if they did, because the adoption of such a rule would gut the fiduciary exception. Trustees could thereafter simply claim that all of their communications with their attorneys "related to litigation" and thus were privileged from discovery.

Moreover, whatever policy arguments can be made in favor of the trustee's need to secure legal advice, the placement of those interests above the beneficiary's need for disclosure is not sound. Clearly, the most heightened duty of loyalty is the one that the fiduciary owes his or her beneficiary. *Varity Corporation v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("ERISA requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'") (citation omitted). And it is that heightened duty that enjoins a trustee to act with an unswerving "eye single" to the interests of the beneficiaries, *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.1982), and with "complete and undivided loyalty" to them. *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 639 (W.D.Wis.1979). Subordinating the interests of the beneficiaries to those of a trustee would offend this rule.

Furthermore, advice concerning legal compliance, alternatives, or strategy is part of the ordinary business of a trust and a trustee, and such legal communications and advice permit no claim of privilege. *Martin,* 140 F.R.D. at 308. A trustee has no "legitimate need" to "shield his actions from those whom he is obligated to serve." *Washington Star,* 543 F.Supp. at 909 n. 5. For this reason, defendants' claim that communications that do not relate exclusively to trust matters are "presumptively immune" to disclosure, Defs.' Mot. for Protective Order at 3, is misguided.

█ The better method is to place the burden on the trustee—who, after all, is the party with access to the documents—to demonstrate that the fiduciary exception does not apply. Thus, in *Everett v. USAir Group,* an ERISA case, the court refused to grant a protective order absent such a showing:

> USAir, the administrator of the Pension Plan, has not demonstrated that there are attorney-client communications responsive to Document Request No. 5 that relate *solely* to its nonfiduciary activities or to the formation, amendment or termination of the pension plan. Nor has it demonstrated that any such documents that may exist are wholly unrelated to plan administration and have not been used in connection with defendants' role as plan administrator. Accordingly, absent a demonstration by defendants that the attorney-client privilege bars discovery of any particular document sought by Document Request No. 5, defendants must comply within 14 days with the Document Request under the principles announced herein.

165 F.R.D. at 4–5 (emphasis in original).

The reason for placing this burden on the trustee, rather than the trust beneficiaries, is to prevent trustees from shielding information about trust administration from the beneficiaries, who are entitled to that information. The Court notes that if the trust beneficiaries and the trustee personally were viewed as "joint clients" of the trust counsel, the same would result: one joint client cannot invoke the privilege against the other. *Garner v. Wolfinbarger,* 430 F.2d 1093, 1102 (5th Cir.1970), cited in *Martin,* 140 F.R.D. at 319; *see also Washington Star,* 543 F.Supp. at 910 ("An employer cannot, by retaining the same counsel as that used by the plan, defeat disclosure by a plan's attorney of communications between the plan's trustees and the employer. The case law clearly holds that when an attorney represents two parties who later become involved in litigation, neither party may assert the attorney-client privilege."). The fact that the choice of litigation counsel for the trustee in this

cation concern a matter as to which the employer owed a fiduciary obligation to the beneficiaries.'" *Id.* at 202 (citing *LILCO,* 129 F.3d at 271). Nor does *Mett* lend support for the creation of such a presumption. That case notes that "beneficiaries are entitled to inspect communications regarding plan administration, whether or not the attorney dispensing the ad-

vice is generally consulted regarding nonfiduciary matters," observing that "[a]n employer's retention of two lawyers (one for fiduciary plan matters, one for non-fiduciary matters) would not frustrate a plan beneficiary's ability to obtain disclosure of attorney-client communications that bear on fiduciary matters." *Mett,* 178 F.3d at 1066 (quoting *LILCO,* 129 F.3d at 272).

case may have been preordained by statute (namely, 28 U.S.C. §§ 516 and 547) does not change this result because "the question does not turn on the number of lawyers." *LILCO*, 129 F.3d at 272 ("An employer's retention of two lawyers (one for fiduciary plan matters, one for non-fiduciary matters) would not frustrate a plan beneficiary's ability to obtain disclosure of attorney-client communications that bear on fiduciary matters."). Therefore, it is defendants who must shoulder the burden of demonstrating that the documents at issue solely concern nonfiduciary matters.

■ The Court will, consistent with logic and prevailing authority, recognize the existence of an attorney-client privilege where a trustee seeks legal advice *solely* in his own personal interest or where the discovery material has been shown to relate *exclusively* to non-fiduciary matters.[5] *See LILCO*, 129 F.3d at 273; *Everett*, 165 F.R.D. at 4; *Hudson*, 73 F.Supp.2d at 202–03. But the Court will not immunize every communication with counsel simply because it involved some incidental interest, or benefit distinguishable from, but ancillary to, that of the trust beneficiaries. With regard to litigation-related communications, the Court will not recognize the existence of an attorney-client privilege except where a trustee obtained legal advice *solely* to protect himself personally or the government from civil or criminal liability, an objective that is inherently inconsistent with his or her fiduciary capacity.[6]

---

**5.** Both the *Zimmer* case and the Restatement (Second) of Trusts § 173 comment b (1957) ("at his own expense and for his own protection") suggest that independent legal advice be sought at the trustee's own personal expense. The Court declines to impose such a requirement on the present record.

**6.** While the Court concludes that the attorney-client privilege and work product protection may be available as to "any advice a fiduciary obtains in an effort to protect herself from civil or criminal liability," *Mett*, 178 F.3d at 1066, such assertion of the privilege will not necessarily occur without other consequences, at least as to the civil aspect of this litigation. Invocation of a privilege against disclosure under circumstances in which a fiduciary owes a duty of loyalty to beneficiaries may result in the drawing of an inference that the undisclosed communications were adverse to the beneficiaries' interests.

Defendants allude to a well-developed distinction in ERISA jurisprudence between "settlor" and "fiduciary" functions to suggest that the material that they wish to shield from discovery might involve non-fiduciary activities by the trustees that are not inconsistent with their duties as trustees. Such "settlor" functions, as described in an ERISA context, include the creation, amendment, or termination of the trust.[7] However, defendants have not articulated any legitimate non-fiduciary functions or activities with which the trustee-delegate might be involved that might be analogous to "settlor" functions under ERISA. Given the paucity of information tendered to support this argument, the Court will not speculate as to what those activities could consist of.

The Court notes that the instant litigation, unlike cases construing "settlor" functions in the ERISA context, involves the construction of the Indian Trust Fund Management Reform Act of 1994 (25 U.S.C. §§ 4001 *et seq.*), the amendment of which would appear to be the exclusive province of Congress, not the trustee. Thus, the question of whether such non-fiduciary functions would preserve any available privileges in this case is academic. In any event, defendants have not demonstrated that any of the materials that would otherwise be responsive to the discovery relate *solely* to any claimed non-fiduciary activities, consistent with *Everett*, 165 F.R.D. at 4, and *LILCO*, 129 F.3d at 273. Indeed, they have presented no evidentiary showing of

---

**7.** *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (affirming the employer's settlor powers to establish, amend and modify the terms of the plans and refusing to extend ERISA's fiduciary duties with respect to such actions); *Anderson v. Resolution Trust Corp.*, 66 F.3d 956, 960 (8th Cir.1995) (affirming the plan sponsor's powers to amend or terminate the plan as business decisions, not fiduciary acts); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1497–99 (3d Cir.1994) (stating that the determination of compensation for purposes of benefit calculations was not a fiduciary act); *Belade v. ITT Corp.*, 909 F.2d 736, 737–38 (2d Cir.1990) (stating that the exclusion of a specific group of employees was not a fiduciary act).

any kind. Accordingly, to the extent that the information that plaintiffs seek relates to the administration of the trust administration, regardless of any pending litigation, the Court affirms that it must be disclosed.

■ Having established a set of general principles, the Court may now rule on the sole specific discovery issue at hand—namely, defendants' assertion of attorney-client privilege in response to the question posed to James E. Cason during his deposition by plaintiffs' counsel. The question related to Mr. Cason's understanding of the nature and scope of the trustee's fiduciary duty, after receiving the advice of counsel. The information sought in response to the question falls squarely within the fiduciary exception to the attorney-client privilege, which exempts from protection any opinions of counsel procured by a trustee in order to guide him in the administration of the trust. Defendants have made no showing that the information sought in response to the question posed to Mr. Cason relates solely to non-fiduciary matters. Therefore, the Court finds that the information sought by the question is not protected under the attorney-client privilege.[8]

### B. Work Product Rule

Defendants also seek a protective order to prevent the disclosure of documents prepared by its attorneys that relate to this litigation, under the work product rule. The work product rule protects (1) documents and tangible things (2) prepared in anticipation of litigation (3) by or for the attorney for a party. Fed.R.Civ.P. 26(b)(3). The D.C. Circuit has noted the difference between the scope of information protected under the work product rule and under attorney-client privilege, explaining that "[t]he protection for attorney work product is broader than the attorney-client privilege, but less absolute. Work product immunity covers not only confidential communications between the attorney and client. It also attaches to other materials prepared by attorneys (and their agents) in anticipation of litigation." *In re*

*Sealed Case,* 107 F.3d 46, 51 (D.C.Cir.1997). Thus, the Court does not enquire as to whether the information was contained in a confidential communication between client and attorney relating to the representation; rather, it asks whether the documents containing the information were "developed in the course of [the attorney's] preparation of the case." 8 WRIGHT, MILLER & MARCUS FEDERAL PRACTICE AND PROCEDURE § 2021 (2d ed.1994).

■ The D.C. Circuit has never required that documents must be shown to have been prepared solely or primarily in anticipation of litigation. Rather, this circuit is in accord with the vast majority of circuits which have held that "the testing question is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case,* 29 F.3d 715 (D.C.Cir.1994) (quoting *Senate of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d 574, 586 n. 42 (D.C.Cir.1987)). The work product rule "has no applicability to documents prepared by lawyers in the ordinary course of business or for other nonlitigation purposes." *In re Sealed Case,* 146 F.3d 881, 887 (D.C.Cir.1998) (quoting *Linde Thomson Langworthy Kohn & Van Dyke v. RTC,* 5 F.3d 1508, 1515 (D.C.Cir.1993)). If the rule is shown to apply, the opposing party may nonetheless obtain documents that would otherwise be protected under the rule upon a showing that he has "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the material by other means." Fed.R.Civ.P. 26(b)(3). On the other hand, work product that contains the opinions, judgments, and thought processes of an attorney receives nearly absolute protection from discovery and must be produced only if the opposing party shows an "extraordinary justification" for production. *Washington Bancorporation v. Said,* 145 F.R.D. 274, 276 (D.D.C.1992)

---

**8.** Defense counsel objected to the question solely on the basis that it would allegedly reveal material protected by attorney-client privilege. Accord-ingly, the Court deems any other possible objections to the question to have been waived.

(citing *In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir.1982)).

■ The Court cannot analyze, in a vacuum, whether communications or documents to which defendants might wish to assert a work product privilege warrant protection. The Court has before it only a blanket recitation that material prepared by defendants' lawyers "once the plaintiff IIM trust beneficiaries became adversaries of the defendants" constitutes work product. Defs.' Mot. for Protective Order at 7. Lacking concrete facts, any ruling that this Court might render with respect to defendants' assertion of work product privilege would necessarily be an advisory opinion without binding effect. The Court therefore declines to enter a ruling at this time regarding defendants' generalized assertion of the work product privilege.[9]

### C. Deliberative Process Privilege and Other Privilege Issues

As defendants correctly state in their reply brief, absent a factual record, this Court has no basis for ruling on the application of the deliberative process privilege to this phase of the instant litigation. If either party seeks a ruling on this issue, or on any other issue related to the assertion of litigation privileges, it should be presented in proper form.[10]

### III. CONCLUSION

Defendants have failed to meet their burden to establish the existence of attorney-client privilege relating to the information sought in response to the question posed to James E. Cason during his deposition on November 5, 2002. Defendants have also failed to provide good cause for the issuance of a protective order with respect to the general categories of: (1) communications to or from defendants' attorneys concerning anticipated or ongoing litigation between beneficiaries and defendants in their capacity as trustees and (2) documents prepared with, for or by defendants' attorneys because of this litigation. Accordingly, and for the reasons stated herein, it is hereby

ORDERED that defendants' motion for a protective order regarding the application of attorney-client privilege and work-product doctrine [1593] be, and hereby is, DENIED. It is further

ORDERED that James E. Cason shall respond to the question posed by plaintiffs' counsel during his November 5, 2002 deposition, namely, "[Your] attorneys have never informed you that court decisions, common law, have an impact on how you manage the trusts; is that a fair statement?"

Any further disputes concerning common-law privileges should be specifically addressed to the Special Master or the Special Master–Monitor, as appropriate, subject to ruling by this Court as provided by Rule 53 of the Federal Rules of Civil Procedure.

SO ORDERED.

### *ORDER*

For the reasons stated in the Report and Recommendation of the Special Master–Monitor on "Motion for Protective Order Seeking (1) Stay of Plaintiffs' Obligation to Respond to Interior Defendants' Request for the Production of Documents, dated June 5, 2002; (2) Stay of Threatened Depositions of the Five Named Plaintiffs; (3) Stay of Rule 11 Motion with Respect to Court–Ordered Attorney's Fees (served June 28, 2002)" and

---

9. The Court notes, however, that in relation to any otherwise discoverable documents or tangible things over which defendants assert the work product rule, but not the attorney-client privilege, the Court may order production of such materials upon a twofold showing: (1) that the opposing party has a "substantial need of the materials in the preparation of the party's case" and (2) that the opposing party is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). The Court may not, however, order discovery of so-called "core work product," i.e., documents that contain "the men-tal impressions, conclusions, opinions, or legal theories" of opposing counsel. *Id.*

10. Because neither party has filed a motion pursuant to Rule 53(e)(2) of the Federal Rules of Civil Procedure, the issue of the binding effect of the May 12, 1999 Opinion of Special Master Balaran regarding attorney-client privilege, work product, and the deliberative process privilege is not properly before the Court. Accordingly, the Court will make no ruling on that issue at this time.

"Defendants' Motion to Compel Discovery and Testimony of Plaintiff Elouise Cobell at Deposition" and "Defendants' Motion for Sanctions Regarding Submission of False or Misleading Affidavits by Plaintiffs' Attorney Dennis M. Gingold," which was filed with this Court on October 22, 2002, it is hereby

ORDERED that plaintiffs' motion for protective order [1373] be DENIED. It is further

ORDERED that defendants' motion to compel discovery [1386] be GRANTED. Accordingly, it is further

ORDERED that within ten (10) days from the date of this Order, plaintiffs shall comply with Interior Defendants' Request for Production of Documents, dated June 5, 2002, by producing to Interior Defendants the documents requested therein. It is further

ORDERED that defendants' motion to compel appearance and testimony of plaintiff Elouise Cobell at deposition [1424] be DENIED as moot; it is further

ORDERED that defendants' motion for an order adopting the Special Master–Monitor's recommendations regarding plaintiffs' production of documents, and ordering plaintiffs' immediate production of documents [1620–1] be DENIED as moot; it is further

ORDERED that defendants' motion to expedite consideration of their motion for an order adopting the Special Master–Monitor's recommendation regarding plaintiffs' production of documents, and ordering plaintiffs' immediate production of documents [1621–1] be DENIED as moot. It is further

ORDERED that defendants' motion for an order (1) adopting those portions of the Special Master–Monitor's recommendation regarding depositions of named plaintiffs, and (2) ordering named plaintiffs to appear and testify at depositions [1626–1] be DENIED as moot. It is further

ORDERED that defendants' motion for expedited consideration of their motion for an order (1) adopting those portions of the Special Master–Monitor's recommendation regarding depositions of named plaintiffs, and (2) ordering named plaintiffs to appear

and testify at depositions [1625–1] be DENIED as moot.

SO ORDERED.